MARY LYNCH *vs.* BOSTON AND MAINE RAILROAD.

Essex.    November 15, 1916. — May 23, 1917.

Present: RUGG, C. J., LORING, DE COURCY, CROSBY, & CARROLL, JJ.

*Negligence,* Railroad, Trespasser.   *Railroad.   Agency,* Scope of authority.

In an action by a woman against a railroad corporation for personal injuries al-
leged to have been sustained at the crossing of the defendant's railroad with a
highway by reason of a freight train starting as the plaintiff, wheeling her baby
in a baby carriage, was attempting to cross the tracks in front of it, the plaintiff
contended that there was evidence that she was within the lines of the high-
way when she was struck by the train.   It appeared that the entire crossing
within the limits of the highway was planked between and just outside the rails
of each of the tracks and that the spaces between the two tracks of the cross-
ing were filled with dirt.   The plaintiff testified that the crossing tender lifted
the front wheels of the baby carriage to get over the rails of the first track and
that she lifted the rear wheels to get over the rails of the track, that they then
got through the space between the tracks and that the crossing tender "lifted
up the front wheels to go over that rail and I the rear.   When we got to the next
rail he lifted up the baby carriage to get over that rail, and I was standing in
the centre between the two rails" of that track "getting ready to lift up the
rear of the carriage" when the accident happened.   She also testified, "I saw
the sleepers under the different tracks."   *Held,* that the plaintiff's testimony
showed that she was not on the planking and therefore that she was outside
the line of the highway when she attempted to cross the tracks.
It is not within the general scope of the authority of a crossing tender at a crossing
of a railroad with a highway to invite a person to cross the tracks of the railroad
outside the limits of the highway.
A necessity which, within the doctrine of *Campbell* v. *Race,* 7 Cush. 408, justifies a
woman in crossing the tracks of a railroad outside the limits of a highway is not
created by the facts that a freight train has come to a stop on the railroad cross-
ing with the highway, that the crossing tender has informed the woman that the
train will be there for about fifteen minutes and that she wants "to get dinner."
In the case described above it was *held* that, even if a jury could have found on
"patching" together the evidence of different witnesses that the plaintiff had
an opportunity to cross the planking within the limits of the highway at the end
of the train, it could not have been found that she did so, because her own tes-
timony showed that she crossed outside the planking where it was necessary to
lift the baby carriage over the rails and where she "saw the sleepers under the
different tracks."
In the same case it was *held* that, if it was found that the crossing had been ob-
structed by the freight train for more than ten minutes, this would not give the
plaintiff the right to cross the railroad tracks outside the limits of the highway.

In the same case it was *held* that, it appearing on the evidence that the plaintiff
must have been a trespasser at the time she was injured and there being no evi-
dence of wilful, reckless or wanton conduct on the part of the defendant, there
was no evidence to go to the jury and a verdict rightly was ordered for the
defendant.

TORT for personal injuries sustained by the plaintiff on June 10,
1912, by being struck and knocked down by a freight train of
the defendant at the grade crossing of the defendant's tracks on
Wallace Street in Peabody.   Writ dated August 26, 1912.

In the Superior Court the case was tried before *Hardy*, J., who
at the close of the evidence, which is described in the opinion,
ordered a verdict for the defendant and reported the case for de-
termination by this court, with a stipulation of the parties that, if
there was any evidence sufficient to entitle the plaintiff under
the pleadings to have her case submitted to the jury, judgment
should be entered for the plaintiff in the sum of $300; otherwise,
that the verdict should stand.

*H. R. Mayo,* for the plaintiff.

*C. A. Wilson,* for the defendant.

LORING, J.   The plaintiff's story of the injury of which she com-
plains in this action is as follows: Between half past eleven and
twelve o'clock noon she was going northerly on Wallace Street
wheeling her baby in a baby carriage.   When she was about fifty
feet away from the crossing of Wallace Street by the main tracks of
the defendant railroad company a freight train going west on the
further or northerly track passed and came to a stop on the crossing.
The exact position of the caboose with respect to the crossing and
the lines of Wallace Street were matters in dispute at the trial.
This train was bound for a point on the defendant's southerly
division. To reach the southerly division, the train had to pass from
the northerly track to the southerly track and from the southerly
track to the rails of the southerly division.   The crossover from
the northerly to the southerly track and the connection with the
southerly division lay to the westward of the crossing here in
question.

The plaintiff testified that when she "reached the tracks the
train had stopped" and that she asked the crossing tender how
long the train would remain there and he said about fifteen min-
utes and asked her if she was in a hurry to which she answered that

she wanted "to get dinner" and thereupon he said to come on and that he would help her across. To quote the words of her testimony: "He walked over toward me, I had the talk with him and then we went to go round the rear of the train. I pushed the carriage along and when we got to the tracks he was at the front end of the baby carriage. He lifted up the front wheels to get over the rails and I lifted up the rear wheels to get over the rails. The train was on the opposite track. We got through the space between the tracks and he lifted up the front wheels to go over that rail and I the rear. When we got to the next rail he lifted up the baby carriage to get over that rail, and I was standing in the centre between the two rails of the further track, getting ready to lift up the rear of the carriage. I saw the sleepers under the different tracks." She testified that without notice of any kind the train backed down, broke the baby carriage and knocked her down, and that she fell between the rails of the northerly track and stayed there until the train stopped. On direct testimony she said: "I should say it [the train] went the whole length of one car, almost, before it stopped." On cross-examination she testified that she did not crawl out from the rear of the car, but "from the centre of the car somewhere, I should say, on Wallace Street — on the other side." She testified that as the freight train stood, there was not room for her to go across the tracks from Wallace Street with the carriage, but that she "could probably have got across alone;" that to the best of her judgment the end of the caboose was two feet inside the end of the planking.

The account of the accident given by the defendant's witnesses was that the crossing tender was on the north side of the crossing and stayed there until he rushed forward and grabbed the baby out of the baby carriage as the train struck it. The crossing tender denied inviting the plaintiff to cross; his statement was that he told her she could not cross. In addition his statement was that she was not on the crossing at the time she was struck. The conductor of the freight train testified that the train "went eight to ten feet before it came to a stop. . . . The caboose was half way beyond the crossing, east of the crossing toward Salem, when I got there." The brakeman of the freight train testified that he was in the caboose and that he heard the crossing tender say "Don't go across there, lady!" and at the same time he saw the plaintiff's

head go across behind the caboose. He jumped for the air lever, put it on and stopped the train. In that connection he testified that when the train came to a stop "the rear of the caboose was in the neighborhood of eight feet from the crossing." The flagman of the freight crew confirmed the testimony of the brakeman. He said "the train moved ten or twelve feet from the time it started until it stopped."

It is stated in the bill of exceptions that the crossing was planked between and just outside of the rails of each of the tracks and that the space between the two tracks of the crossing was filled with dirt. A civil engineer who drew a plan introduced in evidence and who made certain measurements in January, 1915, (two years and a half after the accident,) testified that the planking "was forty-five and seven tenths feet long and covered the entire width of Wallace Street though he knew nothing of the conditions there in 1912."

At the conclusion of the evidence the judge directed a verdict for the defendant and reported the case to this court under a stipulation that if there was any evidence sufficient to entitle the plaintiff to have her claim submitted to the jury the verdict should be set aside and judgment entered for the plaintiff in the sum of $300.

1. The plaintiff's first contention is that on this evidence the jury were warranted in finding that she was within the side lines of Wallace Street when she was struck by the train. It does not appear who called the civil engineer to the witness stand. But his testimony was the only testimony in the case as to the side lines of Wallace Street. The burden of proof was on the plaintiff to show where the side lines of Wallace Street were if she wished to put her case on the ground that she was within those side lines. Unless the side lines of the street testified to by the civil engineer to be the side lines in 1915 are to be taken to have been the side lines at the date of the accident the plaintiff must fail on this issue for lack of proof as to where they were at that time. The view of the evidence most favorable to the plaintiff is that the easterly side line of Wallace Street and the line of the easterly end of the planking were one and the same line.

On this assumption it is plain that the jury were not warranted in finding that at the time of the accident the plaintiff was within the location of Wallace Street. It appeared that the space between the rails of both of the tracks was planked and also a

space outside the rails of each track, but that the space between the two tracks was filled with dirt. The plaintiff's testimony was that the crossing tender lifted the front wheels to get over the rails of the southerly track and she lifted the rear wheels to get over the rails of that track; that they then got through the space between the tracks and the crossing tender "lifted up the front wheels to go over that rail and I the rear. When we got to the next rail he lifted up the baby carriage to get over that rail, and I was standing in the centre between the two rails" of that track "getting ready to lift up the rear of the carriage" when the accident happened. There was no occasion to lift the carriage at least over the further rail of each track if she was on the planking, because on the evidence the whole space between the rails of each track was covered by the planking. In addition she testified "I saw the sleepers under the different tracks." That is in effect direct testimony that she was not on the planking, for as we have said the planking covered all the space between the rails of each track and she could not have seen the sleepers between the rails of the tracks if she had been on the planking. On the plaintiff's testimony she was outside of the line of Wallace Street when she attempted to cross.

2. The plaintiff's second contention is that she was invited by the crossing tender to cross the defendant's tracks outside the limits of the crossing. There was evidence that the crossing tender did invite her to do so. But we are of opinion that that was not an act within the general scope of authority of a crossing tender and that it does not bind the defendant. A crossing tender's duty is to protect persons using the crossing. He has no authority to invite people to cross the tracks of the railroad at points outside of the crossing. R. L. c. 111, § 249, makes it a criminal offence to walk on a railroad track. This means of course outside of a crossing. A person who crosses a track in violation of that section is a trespasser. *Wright* v. *Boston & Albany Railroad,* 142 Mass. 296. It is not within the general scope of the authority of a crossing tender to waive this provision of law and invite a person to cross the track contrary thereto. We have found nothing in the Massachusetts cases relied on by her (*Wilton* v. *Middlesex Railroad,* 107 Mass. 108; *Johanson* v. *Boston & Maine Railroad,* 153 Mass. 57, 60; *Sweeney* v. *Old Colony & Newport*

*Railroad*, 10 Allen, 368; *Mallock* v. *Derby*, 190 Mass. 208; *Bachant* v. *Boston & Maine Railroad*, 187 Mass. 392) which support the plaintiff's contention to the contrary. In so far as *Chicago, Burlington & Quincy Railroad* v. *Sykes*, 96 Ill. 162, and *Scott* v. *St. Louis, Kansas & Northwestern Railway*, 112 Iowa, 54, are authorities to the contrary we are of opinion that they ought not to be followed.

3. The plaintiff's next contention is that under the doctrine of *Campbell* v. *Race*, 7 Cush. 408, the plaintiff had a right to cross the tracks outside of the limits of Wallace Street. The doctrine of *Campbell* v. *Race* is that in case of necessity a traveller on a highway is justified in going on adjoining land when the highway is completely blocked. But the right to go *extra viam* in case of impassable obstructions is limited to cases of necessity. It was pointed out in that case that, "Having its origin in necessity it [this right to go *extra viam*] must be limited by that necessity; *cessante ratione, cessat ipsa lex*. Such a right is not to be exercised from convenience merely, nor when, by the exercise of due care, after notice of obstructions, other ways may be selected and the obstructions avoided. But it is to be confined to those cases of inevitable necessity or unavoidable accident, arising from sudden and recent causes which have occasioned temporary and impassable obstructions in the highway. What shall constitute such inevitable necessity or unavoidable accident must depend upon the various circumstances attending each particular case. The nature of the obstruction in the road, the length of time during which it has existed, the vicinity or distance of other public ways, the exigencies of the traveller, are some of the many considerations which would enter into the inquiry, and upon which it is the exclusive province of the jury to pass, in order to determine whether any necessity really existed, which would justify or excuse the traveller." It is plain that under this rule a finding was not warranted that the plaintiff had a right to go across the tracks beyond the limits of Wallace Street. The fact that she wanted to get home to her dinner is not enough even if it was true that the train was to stay there for fifteen minutes. The circumstances under which the rule of *Campbell* v. *Race, ubi supra,* was applied in *Kurt* v. *Lake Shore & Michigan Southern Railway*, 127 App. Div. (N. Y.) 838, affirmed without opinion in 194 N. Y. 598, and *Smith* v. *Savannah, Florida & Western Railway*, 84 Ga. 698, were quite different

from those in the case at bar. We find nothing in the other cases relied upon by the plaintiff in this connection which requires consideration.

4. The plaintiff's next contention is that by "patching" testimony given by her to the testimony given by the conductor, brakeman and flagman of the freight train the jury could find that she crossed on the planking. The plaintiff testified that the freight train "went the whole length of one car, almost, before it stopped." The testimony of the conductor, brakeman and flagman (stated above) is in substance to the effect that the caboose was eight feet beyond the planking when the train stopped. The plaintiff's argument is that if the freight train was only eight feet beyond the planking when it stopped there must have been ample room between the end of the caboose and the end of the planking for her to have crossed on the planking. On cross-examination the plaintiff testified that she did not crawl out from the end of the caboose but from the centre of it. There is no evidence in the case as to the length of the caboose. But the decisive answer to this argument is that, if on those pieces of evidence the jury could have found that the plaintiff had an opportunity to cross on the planking her own story shows that she did not take advantage of that opportunity. By her own testimony she crossed outside of the planking where it was necessary to lift the baby carriage over the rails and where she "saw the sleepers under the different tracks."

5. The plaintiff's last contention is that there was evidence that the crossing had been obstructed for more than ten minutes by this train passing over and stopping and that that fact (if it was found to be a fact by the jury) gave the plaintiff a right to cross outside of the limits of Wallace Street. There was evidence to that effect. But that fact (even if it were found by the jury to be the fact) did not give the plaintiff a right to cross the tracks outside of the limits of Wallace Street.

6. The plaintiff must be taken to have been a trespasser. It is not pretended that there was any evidence of wilful, reckless or wanton conduct on the part of the defendant. It follows that there was no evidence to go to the jury and that judgment should be entered upon the verdict.

*So ordered.*