ETHEL VAN POPPEL, administratrix, *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Middlesex. November 15, 16, 1926. — February 14, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Negligence*, Contributory, Street railway, Trespasser. *Park. Metropolitan District Commission.*

At the trial of an action by an administratrix against a street railway company for negligently causing conscious suffering and the death of her intestate, there was evidence that the plaintiff's intestate boarded a street car of the defendant of the "one man" type and called a "limited stop" car; that, after the car had made a stop which was contrary to the defendant's rules and the operator had had an altercation with a passenger, the car was stopped on a bend in the Middlesex Fells Parkway in Medford, included within the taking under St. 1894, c. 288, which was not a regularly designated entrance or a proper stop for the car, and the altercating passenger, one other, and the plaintiff's intestate were told to get out; that upon doing so they found that, except where the tracks were, the snow was so deep that it was necessary for them to walk back over the street car location to the street at which

they had wished to stop; that for that purpose they used a track parallel to that on which was the car they had left, the companions of the deceased first looking for and not seeing any car approaching on that track, and the deceased following them; that, after proceeding a little way, the deceased was struck by a car on that track approaching from his rear at a high rate of speed, the operator, although his view was unobstructed, not having seen the deceased nor given any warning signal until within a car's length from him. Rules of the metropolitan district commission in charge of the parkway, adopted under G. L. c. 92, § 37, prohibited entering or leaving the parkway "except at regular designated entrances." *Held,* that

(1) The plaintiff's intestate when struck was within the limits of a highway under the meaning of G. L. c. 229, § 3;

(2) The plaintiff's intestate when struck was not as matter of law a trespasser as to the defendant and could have been found to be where he was by reason of the invitation of the operator of the car from which he had alighted and to have been pursuing a reasonable course to a place of safety;

(3) It could not have been ruled as matter of law that the deceased was negligent in leaving the car at the place where he alighted;

(4) If the deceased was violating any rule of the commission when he met his death, such violation was but a condition or attendant circumstance, and not a proximate cause contributing to his injuries and death, nor a bar to recovery;

(5) The question of the due care of the plaintiff's intestate and of negligence of the operator of the car which struck him were for the jury.

TORT for personal injuries with a declaration in nine counts. Writ dated April 13, 1923.

The second and fourth counts of the declaration were as follows:

"Count Two. And the plaintiff says that she is the duly appointed administratrix of the estate of Peter Van Poppel, late of Medford, in the county of Middlesex, deceased, intestate, and as such brings this action. That the defendant is a street railway company, running and operating cars on the streets, highways and parkways of the said city of Medford in the county of Middlesex. That on or about February 23, 1923, the plaintiff's intestate, while in the exercise of due care, was a passenger of said defendant railway upon a car of the defendant bound from Boston toward Stoneham, via Medford on the Fellsway. That the agents and servants of the defendant at a point beyond Fulton Street and before reaching Forest Street on said Fellsway, in said Medford, at a place not a regular stopping place and

which the defendant, its agents and servants, knew, or in the exercise of reasonable care should have known, was dangerous and unsafe for passengers to alight, stopped said electric car and invited the plaintiff's intestate to alight therefrom. And that pursuant to the invitation of the defendant's agents and servants, the plaintiff's intestate did alight from said car. That both sides of the track or tracks or rails of the said defendant railway were banked with snow to a great depth so as to be impassable for foot passage, and that while in the exercise of due care, and in an endeavor to reach a place of safety, the plaintiff's intestate sought a passageway from the point where he alighted upon the tracks of the defendant and walked toward the nearest regular stopping place in order to get to the foot way or sidewalk. And while the plaintiff's intestate was so proceeding, the agents and servants of the defendant so negligently and carelessly operated an electric car inbound toward Charlestown as to strike the plaintiff's intestate with great force, throwing him to the ground and injuring him; and as a result of said injuries which her said intestate suffered by reason of the carelessness and negligence of the defendant, its agents and servants, he died. Wherefore, the plaintiff claims damages for his death and brings this action for the benefit of those persons thereto entitled by law."

"Count Four. And the plaintiff says that she is the duly appointed administratrix of the estate of Peter Van Poppel, late of Medford, in the county of Middlesex, deceased, intestate, and as such brings this action. That the defendant is a street railway company, running and operating cars on the streets, highways and parkways of the said city of Medford in the county of Middlesex. That on or about February 23, 1923, the plaintiff's intestate was lawfully travelling upon the Metropolitan Parkway, a highway known as the Fellsway, in the city of Medford, in the county of Middlesex, and in the exercise of due care and not in the employment or service of the defendant. And that while walking upon or crossing the tracks of the defendant within the limits of said highway in an endeavor to escape from a place of danger where he had been placed owing to and by

reason of the negligence and carelessness of the defendant, its agents and servants engaged in its business, and owing to the carelessness and negligence of the defendant, its agents and servants in the operation and management and control of a certain electric car, the plaintiff's intestate received injuries; and that as a result of said injuries which her said intestate suffered by reason of the carelessness and negligence of the defendant, its agents and servants, he died. Wherefore, the plaintiff claims damages for his death and brings this action for the benefit of those persons thereto entitled by law."

The action was tried on the second and the fourth counts before *Irwin*, J. Material evidence is described in the opinion. At the close of the evidence, the defendant asked for the following rulings, among others:

"19. There is no evidence that the operator of the inbound car was inattentive to his duty in that he was talking to anybody or looking about improperly.

"20. There is no evidence that the operator of the inbound car did not stop the car as soon as he could under the circumstances here disclosed.

"21. There is no evidence that the operator of the inbound car could have stopped the car sooner than he did.

"22. If the operator of the inbound car took immediate steps to stop the car as soon as he saw the plaintiff's intestate on the track and that he was not negligent in not seeing him sooner, then, in such respect, he is not guilty of negligence.

"23. There is no evidence that the operator of the inbound car ever saw, before this time, people walking between the rails of the track."

The requests were refused. The jury found for the plaintiff on the second count in the sum of $5,194.23 and on the fourth count in the sum of $2,000. The judge reported the action to this court for determination.

*F. J. Carney,* (*P. E. Troy* with him,) for the defendant.

*T. Allen,* (*A. R. MacKusick & G. F. Wenrich* with him,) for the plaintiff.

CROSBY, J. This is an action to recover compensation for the conscious suffering and death of Peter Van Poppel, the

plaintiff's intestate, as the result of injuries received by him when struck by one of the defendant's cars at about 5 P.M. on February 23, 1923, in the Middlesex Fells Parkway, in the city of Medford.

Between Fulton Street on the south and Forest Street on the north the parkway runs approximately north and south, and consists of a traffic road on either side of a space planted with grass, shrubs and trees, through the center of which are located the defendant's tracks. The space is about fourteen hundred feet in length, and from forty-two to one hundred fifteen feet in width; at the place of the accident, which was about three hundred twenty feet north of Fulton Street, between the traffic roadways and near a large elm tree, it is about one hundred eleven feet wide. The deceased was a passenger on an outbound car, of a type known as a "one-man" car, running from Sullivan Square, in Boston to and through Medford.

The car was one with "limited stops"; at Sullivan Square it was announced that it made limited stops to Forest Street, and it had a sign on it to the same effect. This meant that the car would stop at certain designated places known as "dead stops," three in number, and also at points where passengers desired to board the car from Sullivan Square to Forest Street. Fulton Street was not one of the three dead stops. The car was stopped to allow passengers to board it at Charles Street and Myrtle Street; then at Cherry Street for a passenger to alight, thereby violating a rule of the defendant. On approaching Fulton Street, the second stop beyond, one Bianco, a passenger, requested the operator to stop at that street. Upon his refusal to do so Bianco threatened to report him as passengers had been allowed to alight at Charles Street and Myrtle Street and at Cherry Street. The car proceeded about two hundred fifty to three hundred feet beyond Fulton Street and stopped at a place near the large elm tree, which was described by the operator as "not a stop of any sort whatever." He opened the right hand door and, as the jury could have found, told Bianco, one Maturo, and the deceased to get off. These

three passengers then alighted. By stopping there the operator violated a rule of the defendant.

The tracks at this place were cleared of snow but on each side it was piled up to the height of two or three feet. There was evidence that there was no path to get from the tracks to either of the traffic roadways or to Fulton Street except by walking back on the tracks; that there was no room to pass between the standing car and the snow on its right. The three men crossed the outbound track in front of the car and started to walk back to Fulton Street on the inbound track. There was evidence that when they crossed the track and up to the time the car started, no car was in sight coming toward Fulton Street on the inbound track; that there was an unobstructed view up that track for a distance of over three hundred feet; that they walked along in single file, a few feet apart, Maturo ahead, then Bianco, followed by the deceased; that at about the time they reached the rear of the car from which they had alighted the deceased was struck by an inbound car going at a speed of twenty-five to thirty-five miles an hour; that no bell or other signal was sounded until the car was almost upon the men. There also was evidence that the deceased, from his position on the car, might have heard the conversation between the operator and Bianco; that both Maturo and Bianco looked to see if an inbound car was in sight, when they crossed in front of the car from which they had alighted; and that the deceased did not jump before the car hit him, as the others did. There was no evidence of what the deceased did or failed to do as to looking or listening; and no evidence showing where he boarded the car or whether he saw the sign; and it did not expressly appear that he heard the conversation between Bianco and the operator.

As bearing upon the question of the negligence of O'Rourke, the operator of the inbound car, there was evidence that when at least three hundred feet from the elm tree he had an unobstructed view of both tracks ahead of him, but that he did not see the outbound car until he was on the point of passing it, and that he first saw the men on the track about the same time; that about two hundred feet before the place

of the accident he increased the speed of his car, putting on all the power he had and driving the car down grade; that he struck the deceased near the large elm tree; that he did not at any time sound his gong, but he blew his whistle "when he was about forty-five feet, about a car length," from the nearest of the three men. There was evidence that the speed of the car was not reduced until after Van Poppel had been struck. O'Rourke testified that, operating his car at twenty-eight to thirty miles an hour under the conditions existing that day, he might possibly stop the car in two car lengths. There was evidence that the car was not brought to a stop until it had gone at least two hundred feet beyond the point where the deceased was struck.

Apart from questions respecting the due care of the plaintiff's intestate, and negligence of the operator, it is the defendant's contention that the deceased in going upon the inbound track was a trespasser or at least a mere licensee, to whom the defendant owed no duty except to refrain from wanton or reckless conduct. To decide this question it is necessary to determine the nature of the rights of the defendant and the deceased in the place where the accident occurred.

The metropolitan park commission was created by St. 1893, c. 407; by § 4 of this act the board was authorized to acquire and maintain open spaces for exercise and recreation and to preserve and care for such public reservations and make rules and regulations for the use thereof. St. 1894, c. 288, §§ 1, 3 (now G. L. c. 92, §§ 35, 36), authorized the commissioners to "connect any road, park, way or other public open space with any part of the cities or towns of the metropolitan parks district under its jurisdiction, by a suitable roadway or boulevard . . ." (§ 1); to take land by purchase, gift, devise or eminent domain and make rules and regulations for the use of the roadways or boulevards under its care. The commissioners were given power over the roadways and boulevards "taken and constructed hereunder as are or may be vested in them in regard to other open spaces by said chapter four hundred and seven and acts in amendment thereof and in addition thereto," and also "such rights

and powers in regard to the same as, in general, counties, cities and towns have over public ways under their control." (§ 3). By G. L. c. 92, § 36, a liability was created arising out of defect or want of repair on any boulevard maintained by the commission under § 35, and the same rights and remedies were given in relation thereto as are provided by law in relation to the repair of public ways. The taking by the commission of the Middlesex Fells Parkway between Salem Street and Forest Street in Medford, which included the place of the accident, was under St. 1894, c. 288, and hence it was a highway or boulevard. It thus appears that the plaintiff's intestate was within the limits of a highway within the meaning of the death statute, G. L. c. 229, § 3. *Gero* v. *Metropolitan Park Commissioners,* 232 Mass. 389. *Anzalone* v. *Metropolitan District Commission,* 257 Mass. 32.

St. 1919, c. 350, Part IV, § 123, abolished the metropolitan park commission and transferred all its rights, powers, duties and obligations to the metropolitan district commission. This commission under G. L. c. 92, § 35, "shall have the same rights and powers over and in regard to said boulevards as are or may be vested in it in regard to reservations and shall also have such rights and powers in regard to the same as, in general, counties, cities and towns have over public ways under their control."

It is plain that under G. L. c. 92, § 37, the commission had power to set aside the grass spaces between the roadways as reserved spaces and by reasonable rules could exclude the public therefrom, and this is true both as to parkways and boulevards. *Commonwealth* v. *Abrahams,* 156 Mass. 57. *Commonwealth* v. *Tyler,* 199 Mass. 490. *Anzalone* v. *Metropolitan District Commission, supra.*

The commission established the following among other rules: "Rule 1: No person shall enter or leave the Parkway except at the regular designated entrances." "Rule 5: No person shall go within the shrubberies or upon the grass, or stand or lie down upon a bench or go to sleep thereon, or sit, stand, climb over or lie down upon any railing, balustrade, wall or fence." "Rule 10: No person shall ride, or drive an animal or vehicle except upon the driveways, or upon other

than the right hand side of the road except when passing another animal or vehicle, or past an animal or vehicle except to the left thereof, or across a road unless the right of way is given to all other animals or vehicles, or by the side of more than one vehicle; or ride a cycle past an animal or vehicle going in the same direction without sounding a bell; or hitch a horse or other animal to a fence, tree, bush or shrub."

By St. 1900, c. 413, § 1, it was provided that "The board of metropolitan park commissioners shall have authority to grant locations, as provided herein, to street railways within the roads, boulevards, parks and reservations in its care and control." It is agreed that the defendant's location through the parkway was properly granted and that all formalities were complied with in connection therewith. The grant to the defendant was of a location for two tracks setting forth the limits at either end and the side lines thereof, and in the eighth clause specifically defining the word "location" as used in the grant. If the location could be construed as the granting of a "special space" within the meaning of St. 1894, c. 324, now G. L. c. 82, § 34, it does not follow that the plaintiff's intestate was a trespasser or bare licensee.

It could have been found that when the operator of the outbound car brought it to a stop, opened the door and told the passengers, Bianco, Maturo and the plaintiff's intestate, to get off, it was an invitation for them to alight. Upon such a finding it also could have been found that by reason of the high banks of snow the deceased had no means of getting off the tracks and reaching a place outside the defendant's location except by walking along the track until he could reach a place of safety. In these circumstances if his death were caused by the negligence of the defendant or its servants the defendant would be liable. See *McKimble* v. *Boston & Maine Railroad*, 139 Mass. 542.

There was no evidence to warrant a finding that the death of Van Poppel was due to wanton or reckless conduct on the part of the defendant or its employees. That ground of liability has not been argued by the plaintiff and is not alleged.

It could not have been ruled as matter of law that the deceased was negligent in leaving the car at the place where he alighted. The circumstances in which it may have been found that the deceased left the car showed that he was not a trespasser or mere licensee as to the defendant, whatever he might be as to the general public or to the park commission, but that he rightfully might reach the highway by practicable means, exercising due care. The case at bar is not distinguishable in principle from *Powers* v. *Old Colony Street Railway*, 201 Mass. 66.

*Lynch* v. *Boston & Maine Railroad*, 226 Mass. 522, and *Hyams* v. *Boston Elevated Railway*, 216 Mass. 560, and the other cases relied on by the defendant, are distinguishable in their facts from those in the present case.

The contention that the plaintiff is precluded from recovery because of the alleged violation by the deceased of Rules 1, 5, and 10 of the metropolitan district commission cannot be sustained. If there were a violation of Rule 5, it was caused by the act of the defendant in stopping the outbound car and telling the deceased to alight at a place where it was impossible for him to leave the reservation without walking upon it. There was no evidence of a violation of Rule 1, as it did not appear that the plaintiff's intestate entered the parkway at any place other than the designated entrance; nor was there any evidence of violation of Rule 10. If the deceased violated any rule of the commission when he met his death, such violation was but a condition or attendant circumstance, and not a proximate cause, contributing to his injuries and death, nor a bar to recovery. If, as against the commission, the deceased was a trespasser, that fact was immaterial. *Powers* v. *Old Colony Street Railway, supra,* page 70.

The question of the due care of the plaintiff's intestate was for the jury. What he said or heard after leaving the outbound car does not appear. He is presumed to have been in the exercise of due care. G. L. c. 231, § 85. There was evidence that Bianco and Maturo, as well as the operator of the outbound car, looked and saw no inbound car approaching and gave no indication of the approach of a car when the

deceased crossed the outbound track and walked along the inbound track, following the other two men.   This evidence was material on the question of the due care of the deceased. *Kinsley* v. *Boston Elevated Railway*, 209 Mass. 467, 469. *Sullivan* v. *Boston & Maine Railroad*, 242 Mass. 188, 193.

Without reciting the testimony at greater length, it is sufficient to say that there was evidence to warrant a finding that the operator of the inbound car was negligent and that such negligence was the proximate and contributing cause of the injury to and death of the deceased.

It results that a verdict could not rightly have been directed for the defendant.   The defendant's exceptions to the admission and exclusion of evidence and to the judge's charge cannot be sustained.   Its exceptions to the refusal by the judge to give its requests numbered nineteen, twenty, twenty-one, twenty-two and twenty-three, in view of the evidence, must be overruled.

By reason of the conclusion reached, it is unnecessary to consider any of the plaintiff's exceptions taken at either the first or the second trial.

Counts two and four were properly submitted to the jury. As none of the defendant's exceptions can be sustained, in accordance with the terms of the report, judgment is to be entered for the plaintiff on the verdicts rendered on counts two and four.

*So ordered.*