LAURENCE W. BURKE *vs.* METROPOLITAN DISTRICT COMMISSION.

Suffolk. November 9, 1927. — January 5, 1928.

Present: BRALEY, CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Parks and Parkways. Metropolitan District Commission. Mandamus. Public Officer. Gasoline. Way, Public. Memorial Drive.*

In 1897 a corporation conveyed to the city of Cambridge land bounding on the Charles River for park purposes, with a covenant on the part of the city to construct along the boundary line of the park within the parcel of land a roadway and walk to which the company "and its successors and assigns (owners or occupants of adjoining lands of grantor) shall have free access, with the right to use the same for the purpose of a way, subject to such reasonable rules and regulations as may from time to time be made by the Park Commissioners of said City or by any other board or department having for the time being control or management of said park . . . "; and, after the construction of the roadway, called Memorial Drive, the city in 1920 under St.1920, c.509, providing that the metropolitan district commission should have all the powers conferred

upon the metropolitan park commission by St. 1893, c. 407, and acts in amendment thereof, conveyed the land to the Commonwealth, the deed giving the Commonwealth the right to enforce all covenants, agreements and restrictions made or created by former owners of the land with or in favor of the grantor, "said covenants, conditions, agreements and restrictions being for the benefit of the land hereby conveyed." *Held*, that

(1) Memorial Drive is a part of a public park and not a public way;

(2) The authority of the metropolitan district commission over the Drive is derived from St. 1893, c. 407, and amendments thereto;

(3) A successor in title to a portion of the land bordering on the Memorial Drive and formerly owned by the corporation which granted the parkway land to the city had no greater right of access to the Drive than that given by the deed of the corporation to the city: he had no rights merely as an abutting owner;

(4) The determination of the questions, whether access to the Drive should be granted by one driveway or by two, to one so succeeding to the title of the city's grantor, and, if by one, what the width of such way should be, rested with the metropolitan district commission, who, so long as they acted reasonably and in the exercise of a sound discretion, had the right to fix the location and width of the driveway, having in mind the fact that the landowner had a right of access, and also that the public safety and convenience should be considered;

(5) The conclusion of the metropolitan district commission in matters of fact within its jurisdiction upon an application by one so succeeding to the title to the city's grantor, cannot be controverted in the absence of bad faith;

(6) A granting of one way fifteen feet wide to such an owner, who had sought two ways each twenty-five feet wide as a means of access to and egress from a gasoline filling station, was not shown to have been an exercise of bad faith on the part of the commission, where it appeared that, for reasons having relation to the public safety and convenience, they were opposed to the establishment of filling stations with driveways to and from them from and to parkways because of the tendency of openings from such stations to create a special menace to the safety of travellers upon the parkway;

(7) The commission could not be said not to be performing their full duty as public officers in granting to such a landowner who desires to establish a gasoline station on a lot bounding on a parkway no more than his strict right of access, without considering the question whether a wider way or two ways would enable the owner to do a larger business; nor was their action arbitrary or irrational if they expected and hoped that the driveway granted would result in little diversion of traffic from the parkway to the filling station on the lot;

(8) Findings by an auditor, to whom was referred a petition, by such applicant, for a writ of mandamus to compel the commission to grant him two driveways each twenty-five feet wide, if such findings are inconsistent with conclusions reached by the commission in good faith as to matters within their jurisdiction, cannot be considered;

(9) In refusing to grant two driveways for the applicant's gasoline business, the commission deprived him of no legal right.

PETITION for writ of mandamus, filed in the Supreme Judicial Court for the county of Suffolk on March 11, 1927.

The case was referred to an auditor. Material findings by the auditor are stated in the opinion. The case was reserved by *Braley,* J., for determination by the full court upon the pleadings and the auditor's report.

*P. R. Ammidon,* for the petitioner.

*C. F. Lovejoy,* Assistant Attorney General, for the respondent.

SANDERSON, J.   This is a petition for a writ of mandamus, which was reserved on the pleadings and the auditor's report for determination by the full court. The petitioner owns a parcel of land about one hundred feet square abutting on Memorial Drive, in Cambridge, a parkway under the jurisdiction of the respondents. He has leased the land to a corporation for a gasoline filling station. Upon his application for two driveways opening on Memorial Drive, each twenty-five feet wide, to be located at either extremity of the frontage, leaving a fifty-foot space between the driveways, the respondents granted him a permit for one driveway fifteen feet in width. The prayer of the present petition is for a writ to issue ordering the respondents to grant a permit for two driveways of the width and at the location set forth in his application.

Formerly all the land bounding on the Charles River in this vicinity was owned by the Dover Stamping Company, which conveyed a portion of it abutting upon the river to the city of Cambridge for park purposes, with a covenant on the part of the city to construct along the boundary line of the park within the parcel of land a roadway and walk to which the company "and its successors and assigns (owners or occupants of adjoining lands of grantor) shall have free access, with the right to use the same for the purpose of a way, subject to such reasonable rules and regulations as may from time to time be made by the Park Commissioners of said City or by any other board or department having for the time being control or management of said park . . . ."

Roads and boulevards, built under authority of St. 1894, c. 288 (G. L. c. 92, § 35), have been held to be public ways.

*Whitney* v. *Commonwealth,* 190 Mass. 531.   *Gero* v. *Metropolitan Park Commissioners,* 232 Mass. 389.   *Anzalone* v. *Metropolitan District Commission,* 257 Mass. 32.   *Metropolitan District Commission* v. *Cataldo,* 257 Mass. 38. *Kimball* v. *Metropolitan District Commission,* 257 Mass. 55. *Van Poppel* v. *Boston Elevated Railway,* 258 Mass. 389.   But roadways constructed as a part of public parks, by park commissioners acting under the general authority conferred by St. 1893, c. 407 (G. L. c. 92, § 33), and amendments thereof, are not public ways, but an integral part of the park or open space for recreation.   *Gero* v. *Metropolitan Park Commissioners, supra,* page 392.

The roadway in question was to be constructed by the city of Cambridge within the park, and as a part of its park system under St. 1892, c. 341, and St. 1893, c. 337.   A way so constructed does not become a public way in which abutters have special rights apart from agreement.   *Oliver* v. *Worcester,* 102 Mass. 489, 496.   *Jones* v. *Boston,* 201 Mass. 267. The park, including the roadway in question, was conveyed by the city of Cambridge to the Commonwealth in pursuance of the authority granted by St. 1920, c. 509, and it is therein provided that the metropolitan district commission shall have all the powers conferred upon the metropolitan park Commission by St. 1893, c. 407, and acts in amendment thereof; and in the deed the Commonwealth was given the right to enforce all covenants, agreements and restrictions made or created by former owners of the lands with or in favor of the grantor, "said covenants, conditions, agreements and restrictions being for the benefit of the land hereby conveyed."

Statute 1893, c. 407, gave the commissioners power to acquire, maintain and make available to the inhabitants of the metropolitan district open spaces for exercise and recreation, and to that end they were given power to acquire land for "public open spaces" and to preserve and care for such open spaces, and they were authorized to make rules and regulations for the government of such reservations. The authority of the respondents in the case now under consideration is derived from St. 1893, c. 407, and amend-

ments thereof (G. L. c. 92, § 33), and Memorial Drive is a part of a public park and not a public way.

The only right of access the petitioner has to this drive is derived from the reservation in the deed of his predecessor in title, the Dover Stamping Company. He has no rights merely as an abutting owner, and cases bearing on the rights of such owners in public ways are not controlling.

On January 1, 1927, the petitioner executed a lease of the land to the Tide Water Oil Sales Corporation for a period of fifteen years, by a lease duly recorded, the lessor agreeing to obtain for the lessee a license and permit for the keeping, storing and sale of petroleum products; also to procure for the lessee the necessary authority to permit it to construct two driveways, each twenty-five feet in width, running from the premises to Memorial Drive. The driveways petitioned for would pass over a sidewalk and cut through an adjacent strip of grass or lawn in which trees have been planted. One of these trees is in the proposed location of one of the driveways, and the auditor found that this tree could easily be moved. He also found that one driveway fifteen feet in · width would be wholly inadequate to the efficient use of the petitioner's lot as a gasoline station, and that the lessee considers that a single driveway of twenty-five feet in width would no more meet its requirements than one fifteen feet in width, and that it will cancel the lease if a permit for more adequate driveways is not obtained.

The petitioner is entitled to have his legal rights recognized by the respondents and protected by the court. It is assumed that the reservation of the right of access to the parkway in the deed of the Dover Stamping Company gives him a right of access to Memorial Drive, but the decision of the questions whether his right of access should be by one way or two, and if by one what its width should be, depends upon facts and involves the exercise of judgment and discretion by the respondents. The principles which ordinarily control the court in such matters were stated in *French* v. *Jones*, 191 Mass. 522, 532: ". . . whenever the performance of a duty is dependent upon the exercise of judgment and discretion on the part of the person to whom its per-

formance is assigned, that judgment and discretion will not be interfered with or controlled by the writ of mandamus, and this for the reason that there is no warrant of law justifying the substitution of the judgment of the court for the judgment and discretion of the individual exclusively entrusted with the performance of that particular duty." See also *McLean* v. *Mayor of Holyoke,* 216 Mass. 62.

The respondents, acting reasonably and in the exercise of a sound discretion, had the right to fix the location and width of the petitioner's driveway, having in mind the fact that he had a right of access, and also that the public safety and convenience should be considered. *Anzalone* v. *Metropolitan District Commission,* 257 Mass. 32. "The court cannot pass upon these questions of fact: they are to be decided by the commissioners." *Metropolitan District Commission* v. *Cataldo,* 257 Mass. 38, 42. The conclusions of the commission in matters of fact within its jurisdiction cannot be controverted in the absence of bad faith. *Filoon* v. *City Council of Brockton,* 252 Mass. 218, 223. *Morley* v. *Police Commissioner of Boston,* 261 Mass. 269, 278.

The petitioner contends that the findings of the auditor show that the commissioners, in refusing to grant the application for two driveways each twenty-five feet in width, and in authorizing one driveway fifteen feet in width, acted in bad faith in issuing a permit which they knew would be worthless; that because of prejudice against gasoline filling stations they failed to give fair consideration to the facilities necessary for the efficient and convenient operation of such a station; that the petitioner has not received fair and impartial consideration; that the respondents have set their arbitrary will higher than the law and have in effect constructed a barrier along the entire front of the lot; that the issuance of a writ allowing the commissioners to exercise their discretion would be a vain and idle thing, and that the writ should issue compelling the respondents, not to exercise their discretion, but to grant a permit for two driveways each twenty-five feet in width.

The respondents at first, without a hearing, decided to grant a permit for a driveway fifteen feet in width; and then,

at the petitioner's request, heard evidence, after which they adhered to their former decision. The auditor found that they gave no weight to the testimony of the witness called by the petitioner and in coming to their conclusion relied entirely on their own impressions, observations and knowledge. They protested to the licensing board of Cambridge against the granting of a permit to keep and store gasoline on the lot, stating, as their reason for opposition to the maintenance of filling stations on lands abutting the roadways and boulevards under their control, that they were "undesirable and inconsistent with the purposes for which such parkways were constructed and are maintained, and especially where entrances and exits to such locations are by way of these roadways or boulevards." The auditor found that this language accurately reflects the views of the respondents as to the maintenance of gasoline filling stations upon land abutting on the parkways and parks under their control; that this opposition is so strong that, if the commissioners did not feel compelled by the decision in *Anzalone* v. *Metropolitan District Commission, supra,* to grant the right of entrance to the petitioner, they would have refused him all access to Memorial Drive; and that it was only in consequence of that decision that the commissioners voted to grant him a fifteen-foot driveway. He also found that the granting of a single entrance fifteen feet in width from gasoline stations to parkways under its control has been adopted by the commission as a general policy, without regard to the special requirements of any particular lot or location; that it was in pursuance of this general predetermined policy that the petitioner was granted a permit for a driveway of that width; and that the commissioners intended to give no greater rights than they were required to give by the decision of the Supreme Judicial Court.

The respondents testified that they considered a fifteen-foot driveway adequate; that they had in mind the effect upon vehicular and foot traffic and the public generally; and that there was danger to pedestrians when many automobiles are allowed to cross and recross sidewalks. The auditor found that the danger to travellers on foot is practically

negligible, because there are few pedestrians using the side-walks in this place; and that the opinion of the respondents as to the adequacy of the fifteen-foot driveway is wrong if a gasoline business is to be carried on.

It appeared that the gasoline station on the next lot had an entrance and exit of the width which the petitioner seeks; but it is found that in all cases of gasoline stations abutting upon parkways under the control of the respondents where two driveways each twenty-five feet in width exist, permits for such driveways were granted before the present board of park commissioners came into office.

At times automobile traffic on Memorial Drive is very dense, proceeding in four lanes, and the commissioners desire to maintain thereon a free flow of traffic with as little inter-ruption as possible. To accomplish this purpose, it is their desire to restrict the driveway entrances of abutters; and for this reason, as well as for aesthetic considerations, the commissioners would, if they could, refuse any driveway entrances for commercial purposes.

The auditor found that the feeling of opposition of the respondents toward all gasoline filling stations is so dominat-ing as to exclude from their minds, unconsciously perhaps, but nevertheless effectively, fair consideration of the facil-ities necessary for the efficient and convenient operation of a gasoline filling station such as it is proposed to erect on the petitioner's lot; and that the permit for a fifteen-foot drive-way was given with the expectation and hope that it would be wide enough to comply with the Anzalone decision, but narrow enough to discourage traffic over it and thus effec-tively to prevent by indirection that which they prevented by direct action before the Anzalone case was decided.

The auditor also made findings to the effect that traffic would not be obstructed to any appreciable extent if two driveways each twenty-five feet in width were constructed, one to be used as an entrance and the other as an exit, as the petitioner intended that they should be used; that the obstruction to traffic caused by a single fifteen-foot driveway would be far greater, except for the fact that an entrance of that width would tend to discourage motorists from enter-

ing.  He found that a driveway of that width probably would be ample to conduct the business that such a filling station might do, because the tendency of such a driveway would be to render the petitioner's lot practically worthless as a gasoline filling station.

He also found that the commissioners feel that they are not required to grant such facilities in the form of driveways as to enable a person in control of a gasoline filling station to sell the maximum amount of merchandise with the minimum amount of inconvenience and delay; that they feel that they have done their full duty if they grant to the petitioner a driveway which could be used as an entrance and an exit for the gasoline filling station, without considering whether the driveway granted would or might render the lot worthless for that business.

The right of the respondents to regulate in a reasonable way the place where the petitioner's right of access from his lot to the parkway shall be located is not only based upon the terms of the deed, but also upon their general duty to preserve and care for public reservations under their control. The record does not disclose whether any general rule or regulation relating to such matters has been adopted by the commission under the authority granted by G. L. c. 92, § 37. The petitioner's grantor, in conveying the land for a park and reserving the right of access to a way to be built within the limits of the park, would naturally expect that the park commissioners or any other board or department having in charge this park, would jealously guard the public purpose for which the park was established, and that he and his successors in title would receive no greater rights under the restrictions than the terms of the deed reasonably interpreted required.  Ordinarily the reservation of a right of access in a deed would not mean two such rights.  The deed to the city of Cambridge did not specify what the width of the right of access should be, and by granting a permit for a driveway fifteen feet in width, the respondents recognized the right of access reserved in the deed and approved a way of sufficient width for vehicles to enter and leave the lot and to pass each other in so doing, and, so far as appears, this

way would be adequate for the many uses to which such a lot might be put, even if inadequate to enable the petitioner's lessee to do a large business at a gasoline filling station upon it.   There is no finding that fairly can be interpreted to mean that the respondents, in reaching their conclusion, acted in bad faith, or that their decision had no foundation in reason, or that it was a mere arbitrary or irrational exercise of power having no substantial relation to the public safety or public welfare.

The restrictions in the deed from the Dover Stamping Company to the city of Cambridge show by their terms the intention of both parties at that time to prevent the erection of stables or buildings for any mechanical, mercantile or manufacturing purposes within one hundred feet of the park; and in other ways they placed carefully worded limitations on the uses to which the land bounding on the park might be put, fixing minimum costs of buildings to be erected on the grantor's remaining land.   One of the apparent purposes was to prevent this land from being used for commercial enterprises.   The deed expressly provided that the restrictions should remain in force so long as the roadway and walk should be maintained by the city of Cambridge, and the grantor, its successors and assigns (owners or occupants of grantor's adjoining lands) should have free access thereto and liberty to use the same for the purpose of a way subject to the rules and regulations of those having control or management of the park.   These restrictions were not limited in their duration to an exact interval of time, and if they did not expire when the city of Cambridge ceased to maintain the way, they must have expired by virtue of G. L. c. 184, § 23, on March 19, 1927, thirty years after the date of the deed creating them. *Flynn* v. *Caplan*, 234 Mass. 516. Because of the ground on which this opinion rests it is unnecessary to decide whether the restrictions were in force on March 11, 1927, the date when this petition was filed.

The respondents are public officers appointed to perform important public duties, and the public have a right to expect them, within the limits of their powers, to preserve the parks within their jurisdiction for the uses for which they

were established and to prevent encroachments that tend to interfere with or detract from their uses as public parks. The commissioners are within their rights if they take reasonable measures to promote the safety of travellers upon the parkways in their charge, and to that end to prevent entrances thereto and exits therefrom which will tend to interrupt or endanger traffic so far as this legally may be done. They are not acting in excess of their authority if, for reasons having relation to the public safety and convenience, they are opposed to the establishment of filling stations with driveways to and from them from parkways because of the tendency of openings from such stations to create a special menace to the safety of travellers upon the parkway. They reasonably may consider such matters in their efforts to solve the problem of traffic control on congested parkways. We cannot say that they are not performing their full duty as public officers in granting to a petitioner who desires to establish a gasoline station on a bounding lot no more than his strict right of access, without considering the question whether a wider way or two ways would enable the owner to do a larger business; nor can we say that their action is arbitrary or irrational if they expect and hope that the driveway granted will result in little diversion of traffic from the parkway to a gasoline filling station on the lot. They are bound to recognize the petitioner's right of access but, when that is done, they are under no obligation to enlarge that right for his benefit when, in their opinion, such enlargement would endanger the public safety and convenience.

The findings of the auditor that are inconsistent with the conclusions of the respondents as to matters within their jurisdiction cannot be considered. The law has placed the responsibility for deciding these matters upon the commissioners and not upon the auditor or the court. In refusing to grant two driveways for the petitioner's gasoline business, they have deprived him of no legal right. His desire to make the most profitable use of his land cannot enlarge the right of access reserved in the deed, and is subject to the power of the respondents to give reasonable consideration to the public safety and convenience. In the decision of

the respondents to refuse to approve two driveways, and to grant a permit for one, we find nothing which would justify the issuance of a writ of mandamus.

*Petition dismissed.*