## LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Ruby E. Johnson

v.

Rosa E. Goode et al.

October 9, 1973

Case No. 6064

BY JUDGE ALEX H. SANDS, JR.

Defendant's special plea brings up for determination the question of whether or not Ruby Johnson's injury, which is the subject of this action, arose out of and in the course of her employment which, if true, bars her from maintaining the present action. Glen S. Hesby is the owner and operator of the Chesterfield Tea Room located at 900 West Franklin Street and the defendant Nick Chennault has been in his employ for some eighteen years, and at the time of the collision here involved, had the duties of bus boy during meals and clean-up staff at the termination of the day's business together with doing whatever errands he was called upon to do by his employer Hesby. For these services, Chennault was paid a monthly wage of $300.00 and this was regardless of the hours which he was required to work. The plaintiff, Ruby Johnson, became employed by Hesby in March of 1973, her duties being on Mondays through Fridays to take care of the salads served by the lunch room. On Saturday, she was to assist with cooking and serving of the evening meal and for these services she was paid on an hourly basis of $2.00 per hour. Her hours on weekdays from Monday through Friday were from 10:00 a.m. to 3:00 p.m. and on Saturday from 11:00 a.m. to such time as she finished serving the evening meal, which was usually around 8:30 or 9:00 p.m. She was also to work Sundays.

There was no written contract of employment and the testimony as to the conversation between Hesby and plaintiff which constitutes the

contract of employment is, therefore, vital to the issue before the court. The pertinent part of this conversation concerns the conversation at the time in regard to the Saturday night hours. Hesby contends that when plaintiff came in for an interview, he discussed the type of work, the hours and the pay with her. He says that at the time she evidenced dissatisfaction with the Saturday hours because, living on Church Hill, she was afraid to travel to her home at that hour of night on Saturday night. He says that he then told her that he already had arrangements to drive another of his help home, this person living only a few blocks from plaintiff on Church Hill, and that he would take plaintiff home on Saturday night along with the other employee. He says that this arrangement appeared satisfactory to plaintiff and that, pursuant to this arrangement, he had either driven her home himself or had other employees drive her home on each Saturday night after she came to work for him up until the night of the collision here in question. He says that his purpose in arranging this method of transportation for plaintiff and the other employee was "to keep his help happy" and to do it as a favor to them.

Plaintiff, on the other hand, states that while she did make known to Hesby at the time of their first interview her reluctance to travel home late at night on Saturday night, he made no mention of any arrangement to furnish her any transportation and that one of the questions left open at the end of this meeting was the question of her working on Saturday nights. She said that Hesby promised to call her later in the week, which he did, and confirm the fact that he was employing her and she, in turn, agreed to accept the employment and, at the time of her acceptance, no question had ever been brought up as to her being given a ride home. She says that she knew nothing of any such arrangement until the first Saturday night when she was working for Hesby and, at that time, he came up to her and told her that he was going to drive one of the other employees home and would take her home and this practice had been followed from that time on.

On the night of the accident, he got Chennault to drive the plaintiff and the other employee home in his, Hesby's, personal automobile. This automobile he carried as a business expense and used it in the business of the tea room.

The witness, Rosa Tucker, who was the other employee to whom Hesby furnished a ride home, on a few occasions prior to the time that plaintiff became employed at the Tea Room did not get a ride home

with Hesby on Saturday night, and on these occasions she hired a cab, the charges for which Hesby did not pay, but Rosa Tucker paid herself.

It was upon these facts that the pending plea must be decided.

The general rule is thus set out by the Supreme Court of Virginia in the case of *Bristow v. Cross and Century*, 210 Va. 718 at page 719 (1970):

> The *general rule*, well stated in *Clapp's Parking Station v. Ind. Acc't. Com.*, 51 Cal. App. 624, 197 Pac. 369 [1921], is:
>
> "That an employee going to or from the place where his work is to be performed is not engaged in performing any service growing out of and incidental to his employment." The facts agreed upon here set out above show that the deceased had left his employer's premises and was going home from his work.
>
> The cases indicate that there are three exceptions to the general rule above stated and only three.
>
> First: Where in going to and from work the means of transportation is provided by the employer or the time consumed is paid for or included in the wages.
>
> Second: Where the way used is the sole and exclusive way of ingress and egress with no other way, or where the way of ingress and egress is constructed by the employer.
>
> Third: Where the employee on his way to or from work is still charged with some duty or task in connection with his employment.

The evidence introduced upon this plea eliminates the second and third exceptions to the general rule and if the plea is to be sustained, the facts of the case must bring the case within the framework of the first exception, i.e., where the plaintiff employee is being transported to or from work as an incident to his or her employment.

In *Bristow*, the Court of Appeals, however, undertook to refine this exception as follows:

> Under our decisions an injury sustained by a workman who is provided with transportation when going to and from his work, is considered as arising out of his employment when such transportation is the result of an express or implied agreement between the employer and his employee; or where the transportation is furnished by custom to the extent that it

is incidental to and part of the contract of employment; *or when it is the result of a continued practice in the course of the employer's business which is beneficial to both the employer and the employee.* (Italics added)

It is the italicized portion of the above quotation upon which the defendant Chennault bases his plea contending that under the facts as brought out by the evidence heard on this plea, the transportation in question in this case was the result of a continued practice in the course of Hesby's business which benefited both Hesby and the plaintiff. Plaintiff, on the other hand, contends that the arrangement was clearly gratuitous on the part of Hesby and would not justify a finding of implied agreement between Hesby and plaintiff that such transportation would be furnished.

In *Bristow*, the plaintiff had just been employed by a superintendent of Cross and Century Company and had been instructed to report to the superintendent's home the following morning at 7:00 a.m. for transportation to the company's place of business along with other employees who the superintendent customarily transported from his home to the place of employment in the same manner. The plaintiff so reported, and on the trip to the company's office, a collision occurred in which the plaintiff was injured.

The Supreme Court, in upholding the action of the lower court in sustaining the special plea filed by the defendants, pointed out that the arrangement was beneficial to both employees and employer and that while the employees were not on the payroll during the time consumed between the drive from the superintendent's home to the company's office, yet they were being transported in a vehicle owned, controlled and operated by the employer and following a route of its choosing. Factually, this case is very close to the facts in the case at hand. The evidence preponderated in support of Hesby's recollection of the facts, i.e., that the arrangement for transportation was made at the time of the first interview when the employment terms were laid down. Regardless of this, however, it is abundantly clear that the arrangement served the convenience of both parties. Hesby admitted that the furnishing of transportation was to "keep his employees happy," and he stated that "good employees are hard to get." Plaintiff relies upon *LeWhite Construction Co. v. Dunn*, 211 Va. 279, 176 S.E.2d 809 (1970). This case is factually entirely different from the case at bar. The important difference is thus emphasized in the report of the deputy commissioner in

*LeWhite*, upheld by the Virginia Industrial Commission and by the Supreme Court: "LeWhite employees were required to travel to and from North Carolina by their own means and at their own expense and it was not a regular custom for Dunn to ride back to Richmond in a LeWhite truck."

It is, accordingly, held that the testimony taken on the plea in the case at bar brings the case squarely under the doctrine of *Bristow v. Cross and Century* and the special plea will accordingly be upheld.