GROVER C. BELL's (dependent's) CASE.

Suffolk. November 15, 1920. — March 4, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

</div>

*Workmen's Compensation Act*, Injuries to which act applies; Procedure: appeal, findings by Industrial Accident Board, decree by Superior Court. *Agency*, Scope of employment.

From a decision of the Industrial Accident Board and accompanying papers relating to a claim by a widow of an employee under the workmen's compensation act, which were certified to the Superior Court, it appeared that the employee received fatal injuries by being struck by a railroad train as he was on his way home from his work; that the employer's plant was so situated as to furnish two other routes which the employee might have followed to reach his home, but that both of them were "impractical and dangerous;" that the route which the employee was following when injured ran from the plant along a right of way parallel with the railroad track to a gate at the side of the railroad location, which was opposite the dead end of a public street on the other side of the location, where the employee lived, and was nearly opposite a station of the railroad; that at this point there were planks between the rails of the tracks for the passage of teams and, on both sides of the location, gates which were kept locked a part of the time; that, when the employee entered upon his employment, the superintendent accompanied him over the route which he was using when injured; that he continued to use it twice a day in going to and from his work; that the employer's superintendent knew that he so used it, that other employees living in the same direction from the plant as he did also used it, and that the practice was well known to the railroad corporation and to the employer. It did not appear that there was any express provision of the contract of employment that the employee should be considered in the employer's service while crossing the railroad tracks in going from the plant to his home, nor that the employee had acquired any right to such use of the railroad location. The train which struck the employee was not

owned by nor connected with the business of the employer. The Industrial
Accident Board found that there was "no question . . . as to the employee's
right, as one of the workmen employed by the subscriber, to enter and cross
the railroad at the place where the injury occurred;" that the employee's "em-
ployment relation, under his contract of hire with the subscriber, began at
the time he left the public highway and entered the railroad right of way abut-
ting the premises of said subscriber as a licensee by reason of his employment
. . . on his way to work, and did not terminate until he left the railroad tracks
to enter the public highway upon his return home from work;" and that com-
pensation should be awarded. *Held*, that

(1) It could not be said that, as a matter of law in the circumstances, the
employment relation continued until the employee reached a public way;

(2) If the decision of the Industrial Accident Board that the employment
relation continued until the employee reached a public way was a finding of
fact, it was erroneous;

(3) In crossing the railroad tracks the employee was at best a mere licensee;

(4) The finding of the Industrial Accident Board, that there was no ques-
tion as to the employee's right as one of the employees of the subscriber to
enter and to cross the railroad where the injury occurred, was not warranted;

(5) There could not be read into the contract of employment by implication,
owing to the failure of the employer to provide another way to and from the
factory which was convenient and safe, a provision that the employee should
be considered as acting in the course of his employment while crossing the
tracks going to his home;

(6) As a matter of law the employee, when injured, was on his own busi-
ness and was not acting in the course of his employment.

When, in proceedings under the workmen's compensation act, copies of a deci-
sion of the Industrial Accident Board and all papers in connection therewith
are certified to the Superior Court under G. L. c. 152, § 11, it is the duty of
that court to exercise its judicial functions and to enter such a decree as will
enforce the legal rights of the parties as disclosed by the facts appearing on
the record.

CERTIFICATION to the Superior Court under the provisions of
Part III, § 11, of the workmen's compensation act as amended by
Sts. 1912, c. 571, § 14; 1917, c. 297, § 7 (now G. L. c. 152, § 11),
of a decision of the Industrial Accident Board and papers in con-
nection therewith, finding that Grover C. Bell, an employee of
the Commonwealth Chemical Company, suffered a fatal injury
"at a time when he was in a position of peril incurred solely by
reason of and during the continuance of his employment relation,
and while he was performing the necessary act of leaving his
place of employment by the route shown him by the superintendent
for the" employer, that the "injury arose out of and in the course
of his employment and" that his widow was entitled to com-
pensation.

In the Superior Court, the case was heard by *Fox*, J.  Other

material findings and rulings of the Industrial Accident Board and evidence are described in the opinion. By order of the judge, a decree was entered which recited that the insurer requested that a decree be entered dismissing the claim and that the court ruled that it "had no function to perform except to enter a decree to the effect" that the employee's widow "was entitled to compensation as decided by the Industrial Accident Board," that the insurer "claimed an exception to this ruling and" that the court "ordered that such exception be allowed, if it had power to allow the same," that the insurer "thereupon renewed the requests for rulings which it had presented to the Industrial Accident Board and said requests" were "denied by the court and the insurer . . . thereupon claimed an exception to the denial of these requests and the court . . . ordered that such exception be allowed, if it had power to allow the same;" and, in accordance with the decision of the Industrial Accident Board, ordered, adjudged and decreed that the insurer pay to the claimant the same amount as that specified by the board. The insurer appealed.

*R. Gallagher,* (*J. G. Harnedy* with him,) for the insurer.

*H. S. Davis,* (*H. K. Rising* with him,) for the claimant.

DE COURCY, J. The plant of the Commonwealth Chemical Company, the employer, was erected near the northerly end of a large tract of marsh land, lying between the Malden River on the east, and the Boston and Maine Railroad on the west, a portion of the southerly bound touching the Revere Beach Parkway. Between the parkway and the building was salt marsh. Bell lived on the opposite side of the railroad tracks from the chemical company's plant, on Fifth Street in Wellington village. The board member, who heard the case, found: "Bell could have taken a path along the railroad tracks on the side toward the chemical company's works in a route leading directly away from his home and further by climbing up the abutment of the bridge reach the Revere Beach Parkway and then gone at right angles on the bridge over the tracks, and then along the other side of the railroad tracks toward the direction of his home until he came to the dead end of Fifth Street and thereby reach his home. At times it was physically possible to have crossed the stretch of marsh land adjacent to the Chemical Company's plant and thereby reach the

Revere Beach Parkway.　Both of these routes, I find, were impractical and dangerous."　There was a driveway from the northwesterly corner of the employer's premises along a right of way parallel with the track, and leading to a gate at the side of the railroad location a short distance north of Wellington station and opposite the dead end of Fifth Street.　At this place there were planks between the rails for the passage of teams over the railroad, and gates on both sides of the tracks which were kept locked part of the time.

When Bell entered the employ of the chemical company in February, 1917, the superintendent accompanied him, and took him over a route from the railroad station platform, near Fifth Street, across the inbound and outbound passenger tracks, to a platform, then to the southerly end of that platform, and across the outbound freight track, to the above described way at the northwest corner of the employer's premises.　"The testimony further showed that the employees of the said company who lived in the direction Bell resided took the same route that he was taking the day he first went to the chemical company's works and thereafter used until the day of his injury."　Bell was following it, on his way home from work on the morning of June 8, 1917, when he was struck by a train and fatally injured.　The Industrial Accident Board on review, made the additional findings, that the practice of using this route "was well known both to the subscribers and to the Boston and Maine Railroad, no objections thereto having been made by either the chemical company or the railroad; . . . the employee used this route twice a day in going to and from work; and the superintendent for the subscribers knew that he had used this route, by observation, on many occasions."

The scope of a workman's employment is not strictly confined within the time that he is actually engaged at his specific work. The protection of the compensation act attends him while he is on the employer's premises and doing what is necessarily incident to his work.　Without attempting to lay down any hard and fast rule as to when the employment begins and ends, for the purposes of the compensation act we have held that the employee was within the scope of his employment while making his exit from the employer's premises at the end of his day's work.　For

instance, in *Stacy's Case,* 225 Mass. 174, the pond which the employee was crossing on the ice on his way home, was "the premises of his employer." In *O'Brien's Case,* 228 Mass. 380, the workman had started to go home, and was descending a stairway on the outside of the factory building when he was injured. In *Sundine's Case,* 218 Mass. 1, although the common stairs on which the employee was injured remained in the control of the landlord, the employer and his employees had a legal right to use the stairs, which were the only means available for going to and from the workshop on the fourth floor. See also *Hallett's Case,* 232 Mass. 49; *White* v. *E. T. Slattery Co.* 236 Mass. 28, 34. On the other hand accidents which happen to an employee on his way home from work, but not on the employer's premises, as a rule are not regarded as arising in the course of his employment. Ordinarily he has then ceased to be engaged in his employer's business, and is not doing anything he was employed to do. *Donahue's Case,* 226 Mass. 595. *Rourke's Case,* 237 Mass. 360. If he is injured on the public street, he does not come within the benefit of the act, unless his work is of a kind which is pursued on the highway and he is engaged at the time of the accident in the actual work for which he is employed, and not merely using the highway in the exercise of the public right of passage. *Keaney's Case,* 232 Mass. 532.

In the present case, the employee Bell had ended his night's work, and had left the employer's premises. He was his own master. The Industrial Accident Board found and ruled: "Decedent's employment relation, under his contract of hire with the subscribers, began at the time he left the public highway and entered the railroad right of way abutting the premises of said subscribers as a licensee by reason of his employment by the Commonwealth Chemical Company, on his way to work, and did not terminate until he left the railroad tracks to enter the public highway upon his return home from work." So far as this is a ruling of law, it is apparently based upon decisions under the English act, which hold that employment continues until the employee reaches a public road. *Longhurst* v. *John Stewart & Son, Ltd.* [1916] 2 K. B. 803. Our statute never has been so construed. So far as the statement of the board is a finding of fact, it is not supported by the evidence. In crossing the railroad tracks the

employee was a mere licensee, if not a trespasser.  *Lynch* v. *Boston & Maine Railroad,* 226 Mass. 522.  He may have been criminally liable under the railroad law. St. 1906, c. 463, Part II, § 232.  *Wright* v. *Boston & Albany Railroad,* 142 Mass. 296.

Whatever right he or his employer may have had to use the grade crossing at the end of Fifth Street, where precautions were taken for the protection of those using it and of the trains, the board was not justified in their finding that "there is no question in this case as to the employee's right, as one of the workmen employed by the subscribers, to enter and cross the railroad at the place where the injury occurred."  The employer could not confer upon its employees the right to cross the railroad location, nor did it assume to possess or confer any such right.  See *John Stewart & Son, Ltd.* v. *Longhurst,* [1917] A. C. 249; *Charles R. Davidson & Co.* v. *M'Robb,* [1918] A. C. 304, 331.  In *Fox* v. *Rees & Kirby,* 115 L. T. Rep. (N. S.) 358, cited by the board, the railway on which the accident occurred was a private one, leading to the works where the workman was employed, and it was a recognized and regular way used by the workmen by permission of the owners.  In the present case, admittedly the general public had no right to cross the railroad track at the place of the accident.  The chemical company acquired no such right for its officers, employees or others.  Bell's contract of employment did not provide that he was to be considered in the employer's service while crossing the railroad tracks in going from the factory to his home.  No such term can be read into the contract by implication, based on the failure of the chemical company to provide other ways to and from the factory that were convenient and safe.  It is not to be inferred that the company assumed to give Bell a right to cross the railroad location which its own officers could not use except as trespassers.  In short he acquired no such right from his contract of service.

It follows that the employee was on his own business, and not that of his employer, when he was injured on the railroad track.  His contract did not contemplate, nor was he in fact engaged in, any service for the employer at that place.  The risk from which he suffered was not a risk of his employment.  The train which injured him was not owned by the chemical company, and was not connected with its business, nor with the work for which Bell

was employed. The case is not distinguishable in principle from *Fumiciello's Case*, 219 Mass. 488, where the employee was killed by a train when on his way home from work. We are constrained to say that the board were not warranted in finding that the employee's injury arose out of and in the course of his employment, within the meaning of the workmen's compensation act.

It is recited in the decree that the court ruled it "had no function to perform except to enter a decree" in accordance with the decision of the Industrial Accident Board. This was erroneous. As was said in *Brown's Case*, 228 Mass. 31, 38, "When copies of the decision of the board and all papers in connection therewith have been transmitted to the Superior Court, it is the duty of that court to take such action and make such a decree as the law requires on the facts found by the board. It is for the Superior Court to determine what order or decree ought to be made on the facts found. It has jurisdiction over the case in the same way and to the same extent that it has for example in a suit in equity where the facts have been found by a master. This was fully set forth in *McNicol's Case*, 215 Mass. 497."

<div align="right">*Decree reversed.*</div>