## Richmond

ROBERT BRISTOW v. BARRETT C. CROSS AND CENTURY
CONCRETE SERVICES, INC.

April 27, 1970.

Record No. 7112.

Present, All the Justices.

*Seymour M. Teach (Breit, Rutter, Cohen, Ermlich and Friedman,* on brief), for plaintiff in error.

*Ralph E. Lawrence (Williams, Worrell, Kelly & Worthington,* on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

Robert Bristow, plaintiff, seeks to recover damages of Barrett C. Cross and Century Concrete Services, Inc., defendants, for personal injuries sustained in an automobile accident. Defendants filed their special plea to plaintiff's motion for judgment, alleging that his remedy against them was an action under the Workmen's Compensation Act. The lower court sustained the special plea and entered final judgment for defendants, to which action we granted plaintiff a writ of error.

The sole question at issue is whether plaintiff's injury arose out of and in the course of his employment, thereby barring him from maintaining a common law action against defendants.

Cross, who lived at 814 Reservoir Avenue, Norfolk, Virginia, was employed by Century Concrete in a supervisory capacity. On Sunday, July 16, 1967, Bristow applied to Cross for employment by Century Concrete and was hired. Plaintiff was told to be at Cross' home the next morning when he and other employees of defendant company would be driven to its office located on Little Creek Road. Thereafter they would be transported to the job site in Hampton.

As directed, plaintiff reported to the Cross residence at 7 A. M. on the morning of July 17, 1967. Bristow and 7 or 8 other employees were being transported in a company truck driven by Cross and were en route to the company's office when a collision occurred between the truck and an automobile driven by one Roger L. Ferry.

In *Kent* v. *Vir.-Car. Chem. Co.*, 143 Va. 62, 66, 129 S. E. 330, 331, 332 (1925) we said:

"The *general rule*, well stated in *Clapp's Parking Station* v. *Ind. Acc't. Com.*, 51 Cal. App. 624, 197 Pac. 369, is:

" 'That an employee going to or from the place where his work is to be performed is not engaged in performing any service growing out of and incidental to his employment.' The facts agreed upon here and set out above show that the deceased had left his employer's premises and was going home from his work.

"The cases indicate that there are three exceptions to the general rule above stated and only three.

"First: Where in going to and from work the means of transportation is provided by the employer or the time consumed is paid for or included in the wages.

"Second: Where the way used is the sole and exclusive way of ingress and egress with no other way, or where the way of ingress and egress is constructed by the employer.

"Third: Where the employee on his way to or from work is still charged with some duty or task in connection with his employment."

Defendants take the position here that the first exception applies, i.e. that plaintiff-employee was being transported to work as an inci-

dent to his employment, and that his injury arose out of and in the course of his employment.

Counsel for plaintiff cites *Farm Bureau Mut. Auto. Ins. Co. v. Smoot*, 95 F. Supp. 600 (S.D. W. Va. 1950), as expressing the transportation exception to the general rule in a manner which is presently accepted by many and possibly the majority of jurisdictions. He quotes the following extract from that case:

> "The weight of authority is to the effect that an employee making use of transportation customarily and gratuitously furnished by the employer, in the absence of an express provision for same, is not acting in the course of his employment unless a duty to transport can be implied from the attendant circumstances in the contract of hiring. . . . This duty may be implied where it is shown that the transportation was provided as incident to procuring the services of an employee whose home is a great distance from the place of work. . . . It may also be implied where the transportation provided by the employer is shown to have been a necessary incident to the employment because it was the only practical means by which the employee could travel to and from the place of work. . . . At any rate, it must be shown that the transportation so furnished was a necessary incident of the employment rather than a mere favor not in furtherance of the employer's business. . . ." 95 F. Supp. at 603, 604.

Obviously the exception applies where the transportation is expressly made a part of the employment contract. In the instant case there was no express agreement between Bristow and Cross that defendants were to provide such transportation. However, this court has applied the exception in cases where the transportation furnished by the employer was not an express or negotiated part of the employment contract with the employee. *Hann* v. *Times-Dispatch Pub. Co.*, 166 Va. 102, 184 S. E. 183 (1936); *Lucas* v. *Biller*, 204 Va. 309, 130 S. E. 2d 582 (1963); *Stillwell* v. *Iowa Nat'l. Mut. Ins. Co.*, 205 Va. 588, 139 S. E. 2d 72 (1964).

Under our decisions an injury sustained by a workman who is provided with transportation when going to and from his work, is considered as arising out of his employment when such transportation is the result of an express or implied agreement between the employer and his employee; or where the transportation is furnished by custom to the extent that it is incidental to and part of the con-

tract of employment; or when it is the result of a continued practice in the course of the employer's business which is beneficial to both the employer and the employee.

When employed on July 17, 1967, plaintiff was instructed to be at the residence of defendant Cross at 7 A. M. the following morning, at which time he and fellow employees would be transported to work. Plaintiff had previously been employed by Century Concrete and knew about the arrangement for transportation of employees, for he testified ". . . that's where we generally meet, Cross' house."

He further said, with reference to the other employees who rode the truck: "They got in at his [Cross'] house. That's where they met him, . . ."

The evidence disclosed that plaintiff's car was not running at the time, and he said he did not have any way to get to work. Bristow also testified that while some of the other employees who were being transported owned automobiles, "The most majority of them does not have cars". After this statement, the following pertinent exchange occurred between counsel and plaintiff:

"Q. Was this just part of the employment, you getting in the truck and riding to work?
"A. That's right.
"Q. Sort of a fringe benefit of the job?
"A. That's right.
"Q. Saved you some gasoline money?
"A. Right. That's for the employment, the man be sure he gets the men.
"Q. And gets them to work on time?
"A. That's right.
"Q. So it does a little good to both your employer and you?
"A. Oh, yes. It helps all the way around."

Admittedly there is nothing in the record to indicate that plaintiff was required to accept company transportation. He was offered no extra compensation if he drove to and from work in his own car. Plaintiff's wages began from the time of his arrival at the company's office.

However, the testimony leads only to the conclusion that it was the practice of defendants to pick up their employees at the foreman's residence, and sometimes at other points, and to transport them

to the company's office, then from there to the job site. This arrangement was in effect and was followed on July 17, 1967.

Manifestly this was an arrangement which was beneficial and profitable to both the employer and employee. The employer benefited in the manner suggested by the plaintiff, for by transporting its employees their presence on the job was assured. It was beneficial to the employees in that they were saved the expense and trouble of providing their own transportation. While the employees were not on the payroll during the time consumed between the drive from the Cross home to the company's office, they were nevertheless in a vehicle owned, controlled and operated by the employer, and following a route of its choosing.

The transportation was not a gratuitous gesture made by the employer at the request of Bristow or other employees. It was by prearrangement and grew out of the employment of men to work for Century Concrete. Plaintiff's riding in the vehicle was but another incident to his employment and was one of mutual benefit.

We agree with the action of the lower court in sustaining the special plea filed by defendants. The transportation furnished plaintiff to work was an incident of his employment by defendants, and the injury he sustained which occurred during the course of travel arose out of and in the course of his employment. The parties were under the canopy of the Workmen's Compensation Act, and the Industrial Commission of Virginia had exclusive jurisdiction to determine plaintiff's claim.

Accordingly, the judgment of the lower court is

*Affirmed.*