# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

LeWhite Construction Company, Inc., Et Al. v. Frank Dunn,
Administrator, Etc.

October 12, 1970.

Record No. 7266.

Present, All the Justices.

*John M. Oakey, Jr.; Willard I. Walker (McGuire, Woods &*
*Battle,* on brief), for appellants.

*George F. Tidey (Somma, Tidey & McMurtrie,* on brief), for
appellee.

Cochran, J., delivered the opinion of the court.

This appeal by LeWhite Construction Company, Inc. is from an

order of the Industrial Commission finding that injuries received on Friday, May 19, 1967, by Gerald K. Dunn, now deceased, did not arise out of and in the course of his employment, and denying compensation to his estate.

The record shows that at the time he was injured, Dunn had been employed as a laborer by LeWhite Construction Company, Inc. for approximately one year, though not continuously, installing signs on an interstate highway near Greensboro, North Carolina.

Dunn was injured at about 9:30 p.m. on U.S. Route 360 in Nottoway County, Virginia, while returning from North Carolina for the weekend. He and a fellow employee, R. L. Garner, were riding in a pickup truck owned by LeWhite and operated by another employee, Freddie Gene Dent, when the truck was involved in an accident. All three employees resided in the Richmond area, where LeWhite's principal office was also located.

The findings of fact, made by Deputy Commissioner Wilhoit and approved by the Commissioner, may be summarized as follows:

> LeWhite employees were required to travel to and from North Carolina by their own means and at their own expense, and it was not a regular custom for Dunn to ride back to Richmond in a LeWhite truck.
>
> On the day of the accident LeWhite directed Dent to drive the pickup truck, pulling a trailer, to Richmond to bring back materials. Dunn and Garner had ridden from Richmond to North Carolina with Dent in his car and had paid for their transportation. They "elected" to ride back home in the truck for the weekend and were permitted, but not instructed or requested, by LeWhite to do so.
>
> It was not clear who would load the materials or when the loading would be done but Dunn was not instructed to assist in this work.
>
> Dunn was not being paid when he was injured, was not on an errand for LeWhite and was not being furnished transportation as a part of his employment contract. He was commuting from the job to his home, a personal mission from which LeWhite was receiving no benefit. The hazard to Dunn was the same whether he rode in the truck or Dent's private car.

The Deputy Commissioner concluded, and the full Commission affirmed his holding, that the applicant had failed to prove by a preponderance of the evidence that Dunn's injuries arose out of and in the course of his employment.

LeWhite contends that material findings of fact made by Deputy Commissioner Wilhoit, and adopted by the Commission, are not based upon substantial evidence and that Dunn's injuries are compensable under the Workmen's Compensation Act as a matter of law.

■ The findings of fact, if supported by credible evidence, are binding upon us. *Robinette* v. *Kayo Oil Company*, 210 Va. 376, 377, 171 S.E.2d 172, 173 (1969); Code § 65.1-98.

■ Dent and Dunn were dead at the time of the hearing. The pertinent evidence consisted of testimony given by fellow employees, H. J. Cole and R. L. Garner, Lewis White, president and sole stockholder of LeWhite, and his brother, Paul White, in charge of the North Carolina project.

Cole, who had been employed by LeWhite for about six months before being laid off two weeks prior to the accident, testified that he had worked in North Carolina with Dunn and Dent. He and Dunn usually rode in Dent's car from Richmond to Greensboro early each Monday morning and back each Friday, paying Dent for the transportation. If LeWhite had a truck returning to Richmond they were permitted to ride back in it with Dent driving. Cole had done this "a couple times" and Dunn had been with him. On one of the trips he, Dunn and Dent had bought gas for which they had not sought reimbursement.

Garner had only worked for LeWhite the week of the accident. He testified that it was understood, when he was employed, that he must furnish his own transportation between Richmond and Greensboro. He made arrangements to pay Dent for the round trip in Dent's car and, accompanied by Dunn, rode with him to Greensboro the Sunday before the accident. He intended to return with them in the car after work on Friday.

Lewis White undertook to prove a custom of providing free transportation for employees whenever, at his convenience, there was a truck making the trip. However, he admitted that transportation between Richmond and North Carolina was regularly provided only for LeWhite superintendents, and that Dunn had been directed, when employed, to provide his own transportation.

Thus, there was credible evidence to support the finding that free transportation was not furnished Dunn as a regular custom or as part of his employment contract.

Lewis White, who was in the Richmond office, testified that he expected the men riding in the truck to Richmond on May 19th to do the loading and unloading required there as a matter of "normal

procedure". He conceded that this work could have been done any time over the weekend.

Paul White testified that he "believed" he asked Dunn and Garner "if they wanted to" ride back in the truck on May 19th, because there was material to be loaded in Richmond. They were not being paid to ride, but Dent was being paid to drive the truck.

Garner, denying that Paul White ordered or requested them to ride in the truck, said that, since Dent was coming back in the truck, "it was all right to ride to Richmond, so we rode with him." Garner admitted hearing Paul White and Dent talk about bringing some materials back from Richmond in the trailer, but denied that he was ever ordered or requested to do any loading or unloading in Richmond.

The Deputy Commissioner was justified in finding, from this testimony, and reasonable inferences therefrom, that Dunn was permitted to ride in the truck for his personal convenience in returning home for the weekend, and was not instructed to do any work in Richmond.

Concluding that there was credible evidence to support the findings of fact we now consider the applicable law.

In *Kent* v. *Vir.-Car. Chem. Co.*, 143 Va. 62, 66, 129 S. E. 330, 331-332 (1925), we recognized three exceptions to the general rule that an employee going to or from work is not engaged in any service growing out of and incidental to his employment, of which these two are relied upon by LeWhite:

> "First: Where in going to and from work the means of transportation is provided by the employer or the time consumed is paid for or included in the wages.

* * * * *

> "Third: Where the employee on his way to or from work is still charged with some duty or task in connection with his employment."

Most of the decisions applying the first exception have been based upon agreements, express or implied, that the employer will furnish the workmen free transportation to and from his work. *Stillwell* v. *Iowa Nat'l Mutual Ins. Co.*, 205 Va. 588, 139 S. E. 2d 72 (1964); *Scott* v. *Willis*, 150 Va. 260, 142 S. E. 400 (1928); *Russell* v. *Williams*, 47 O. I. C. 284 (1965). Here, as the Commission found, there was no such agreement.

In *Bristow* v. *Cross*, 210 Va. 718, 173 S. E. 2d 815 (1970) we concluded that a workman was also covered by the act in these instances:

". . . where the transportation is furnished by custom to the extent that it is incidental to and part of the contract of employment; or when it is the result of a continued practice in the course of the employer's business which is beneficial to both the employer and the employee." 210 Va. at 720-721, 173 S. E. 2d at 817.

There, the employee and other workers met at the home of the employer's representative, who drove them to work. This was found to be the customary practice which not only gave the employees free transportation but benefited the employer by assuring their presence on the job. Injuries received during the course of transportation were therefore held compensable.

In *Hann* v. *Times-Dispatch Pub. Co.*, 166 Va. 102, 184 S. E. 183 (1936), relied upon by LeWhite, the employer's supervisor, as he had frequently done with other tardy newscarriers, went to the home of a boy who had overslept and drove him to work. The carrier's injuries received enroute were held to be compensable as he came under his supervisor's control and was about his employer's business when he accepted the free ride. The benefit derived by the employer from such transportation is obvious.

We conclude that an employee furnished transportation by his employer, absent express or implied agreement or custom incidental to the employment contract, is not covered by the Act unless such transportation is beneficial to the employer. Here, under the Commission's findings of fact, the free transportation for Dunn was merely a favor to him which provided no benefit to his employer.

LeWhite finally contends that Dunn was within the exclusive coverage of the Act because on his way from work he was still charged with the duty of assisting in loading the trailer in Richmond and switching it to the new truck for the return trip. We do not agree.

Dunn was going to Richmond for the weekend either in the truck or in a private car. He was not instructed to load or unload in Richmond. Any such work, if required of him, could have been done at any time over the weekend. Indeed, the time and place of the accident, as well as Dent's blood alcohol count of 0.24%, strongly suggests that no work in Richmond on Friday night was contemplated by any of the three employees. Hence, transportation given Dunn on

Friday is too remote to be considered incidental to a task that might have been accomplished as late as Monday morning, where a weekend at home intervened.

Under the findings of fact approved by the Commission, which we have concluded were based upon credible evidence, Dunn's injuries cannot fairly be traced to his employment as a contributing proximate cause.

*Affirmed.*