Richmond

## GATX TANK ERECTION COMPANY, ET AL.

### v.

## WILLIAM H. GNEWUCH

November 26, 1980.

Record No. 791827.

Present: All the Justices.

*Harvey B. Cohen (Alex Kozinski; Joanne F. Alper; Peter D. Trooboff; Leonard, Cohen, Gettings & Sher; Covington & Burling,* on briefs), for appellants.
*Peter M. Sweeny (Ashcraft & Gerel,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

In this appeal by GATX Tank Erection Company and its insurer, Travelers Indemnity Company (collectively, GATX) from an Indus-

trial Commission award of compensation to William Gnewuch, a GATX employee, the question is whether under the uncontroverted facts the accident arose out of and in the course of his employment, as required by Code § 65.1-7.[1] Specifically, we must decide whether Gnewuch, who was injured off his employer's premises while going home from work, came within one of the recognized exceptions to the general rule that an employee is not covered by the Workmen's Compensation Act in coming to or going from work.

On September 28, 1978, Gnewuch was employed by GATX as a crane operator in the erection of fuel storage tanks at the Steuart Petroleum jobsite, in Prince William County. At the conclusion of his workday he drove his pickup truck from the construction area to return home. He proceeded north on a road that extended along the eastern side of the Richmond, Fredericksburg and Potomac Railroad Company (R.F. and P.) track, drove through an open gate that was 151 feet, 8 inches from the edge of a railway crossing, turned west onto a dirt road, and entered the crossing. His truck was struck on the crossing by an R.F. and P. locomotive at 4:05 p.m., and Gnewuch sustained permanently disabling injuries, the severity of which is not questioned.

State Trooper D. L. Powell investigated the accident. He identified photographs of the crossing and its approaches, and described the area. Powell testified that the road extending from the worksite towards the crossing and shown in photographs to have a gravel surface did not have such a surface at the time of the accident.

According to Powell, the only means of access to the crossing from the west was by way of State Route 635, also known as Cherry Hill Road, which ended a short distance west of the crossing at a sign denoting the end of State maintenance. From that sign a dirt road extension, unnamed but sometimes referred to in the record as Cherry Hill Road Extended, continued in an easterly direction over the crossing to a dead end at the Riverside Restaurant and the Potomac River. The gravel road from the GATX work area made a "T" intersection with Cherry Hill Road Extended just east of the crossing.

Thus, a driver traversing the crossing from the west could either turn south to enter the worksite or continue east to the restaurant or the river. But a driver leaving the work area to go home, wherever he lived, could only do so by turning west on Cherry Hill Road Extended,

---

[1] Code § 65.1-7 provides in pertinent part as follows:

"Injury" defined.—Unless the context otherwise requires, "injury" and "personal injury" mean only injury by accident...arising out of and in the course of the employment. . . .

proceeding over the crossing, and continuing west on Route 635. Likewise, a driver coming from his home, regardless of where he resided, to work at the GATX site would, of necessity, approach from the west on Cherry Hill Road Extended and cross the railroad track before turning into the gravel road leading to the worksite. The officer knew of no way for workmen arriving at or leaving the jobsite to cross the R.F. and P. track other than by Cherry Hill Road Extended.

Richard B. Sierra, Director of Employee Relations for GATX, testified to explain certain payments of $6 per day that were included in Gnewuch's paychecks. These payments, similar to payments made to other GATX employees on the Steuart Petroleum project, were made to compensate Gnewuch for "some inconvenience" in traveling to and from work at a jobsite located more than 20 miles from the Washington Beltway. The fixed amount, which has paid regardless of the number of miles travelled, bore no relationship to the actual cost of transportation. The payments were negotiated and incorporated into a collective bargaining agreement executed by GATX and the union to which Gnewuch belonged. Although the agreement expired April 30, 1978, GATX continued to make the payments. Sierra confirmed that by making such payments GATX encouraged operating engineers to accept the inconvenience of going to distant jobsites.

The Deputy Commissioner, by opinion dated May 21, 1979, found that Gnewuch had travelled the length of a private roadway from the tank area to the crossing, which was not publicly maintained; that there were no other crossings within a considerable distance; that Gnewuch was allowed an extra payment for each day of travel; and that the way used in going to and from work was the sole and exclusive means of ingress and egress. Accordingly, he ruled that Gnewuch had proved a compensable accident. On review, the Commission, by opinion dated November 21, 1979, one Commissioner dissenting, adopted the findings of fact and conclusions of law contained in the Deputy Commissioner's opinion and affirmed the award.

The legal principles pertinent to this appeal are well established. In *Kent* v. *Virginia-Carolina Chemical Co.*, 143 Va. 62, 66, 129 S.E. 330, 331-332 (1925), we held that an employee going to and from work is not engaged in any service growing out of and incidental to his employment unless one of the following exceptions applies:

"First: Where in going to and from work the means of transportation is provided by the employer or the time consumed is paid for or included in the wages.

"Second: Where the way used is the sole and exclusive way of

ingress and egress with no other way, or where the way of ingress and egress is constructed by the employer.

"Third: Where the employee on his way to or from work is still charged with some duty or task in connection with his employment."

In *LeWhite Construction Co.* v. *Dunn*, 211 Va. 279, 176 S.E.2d 809 (1970), we recognized the general rule and the exceptions. The second exception was not in issue, and we affirmed the Commission's ruling that the first and third exceptions were not applicable to the facts and that the employee's injuries, therefore, did not arise out of and in the course of his employment. In the present case, the Deputy Commissioner concluded, and a majority of the Commission agreed, that Gnewuch came within the first and second exceptions.

■ We agree with GATX that the award cannot be justified under the first exception. The payment of $6 per day did not qualify as payment for the time consumed in travel. It was not related to travel time, distance travelled, or the transportation expense actually incurred by the employee. The payment was not reimbursement of travel expense, but was additional compensation to attract skilled workers to a remote jobsite, as the Commission had construed a similar payment of $5 per day in *Pettus* v. *Stone & Webster Engineering Corp.*, 55 O.I.C. 281 (1972). So the Commission erred in ruling that Gnewuch came within the first exception defined in *Kent*.

■ The dispositive question is whether the second exception applies. In the 55 years that have elapsed since *Kent* was decided, we have not had occasion to consider again the application of this exception. In *Kent*, we held that the employee did not come within the second exception where he sustained an injury on his way home by the "shortest and most practical route" which was not the sole or exclusive means of access. 143 Va. at 64, 129 S.E. at 331. Indeed, the bridge on which he was injured had a sign at each end warning against trespassing. One of the alternative routes was longer than the one the employee used, and the other was subject to occasional flooding, but both were available.

Our opinion in *Kent*, citing with approval *Bell's Case*, 238 Mass. 46, 130 N.E. 67 (1921), distinguished *Cudahy Packing Co.* v. *Parramore*, 263 U.S. 418 (1923), where compensation was approved for the death of an employee killed on his way to his employer's plant while crossing a railroad track near the plant. In *Parramore*, the employee had no choice but to cross the track to get to work as there was no other means of ingress. In *Bell's Case*, however, compensation was

denied for the death of an employee killed while walking home from work by one route when there were two other routes available, even though they were impracticable and dangerous.

Therefore, under the rationale for the second exception set forth in *Kent,* if the route in question is the only available way for an employee to get to .and from work, the employer is deemed to have invited the employee to use it. The way becomes in effect a part of the employer's premises while the employee travels over it to and from the jobsite. We construe the exception to mean that a road, or segment of one, is the "sole and exclusive" route whenever it is the *only* way for *all* employees to get to and from the place of employment.[2] When the employees have no choice, the employer is deemed to have invited them to use the one available means of ingress and egress. And where, as here, an employee is injured as a result of a special hazard, *e.g.,* a railroad ·crossing existing near the employer's premises, on the sole and exclusive route, the injury is compensable. Larson, Workmen's Compensation, Vol. 1, § 15.15 at 4-42 (1978). Thus, a "special hazard" refers to some extraordinary danger at a particular location, but it does not mean that the risk to the employee is different from that to which the general public would be exposed at the same location.[3]

The record in this case shows that the only way that GATX employees could go to and from the jobsite was by means of Cherry Hill Road, Cherry Hill Road Extended, and the intersecting gravel road leading into the jobsite. Cherry Hill Road was a public road, maintained by the Commonwealth; Cherry Hill Road Extended, though not publicly maintained, was used by the public. The public nature of the roads, however, is irrelevant. There were no roads turning off Cherry Hill Road Extended between the eastern end of Cherry Hill Road and the intersection with the gravel road. Therefore, Gnewuch was using the only available means of egress from the worksite when he turned west on Cherry Hill Road Extended and encountered the special haz-

---

[2] Under this construction, the exception is limited to ways that must be used by all employees, rather than to ways that must be used only by employees residing in uniquely remote or dangerous locations. The sole means of egress, for example, terminates at the first point where a choice of routes becomes available to employees leaving work. The employees' preference of one route rather than another is of no consequence if two or more routes are available.

[3] We have adopted the "actual risk test" which requires only that the employment expose the employee to the particular danger giving rise to the injury, regardless of the exposure of the general public to similar risks. *Lucas* v. *Lucas,* 212 Va. 561, 563, 186 S.E.2d 63, 64 (1972); *Immer and Company* v. *Brosnahan,* 207 Va. 720, 725, 152 S.E.2d 254, 257-58 (1967); *Dreyfus & Co.* v. *Meade,* 142 Va. 567, 574, 129 S.E. 336, 338 (1925).

ard, *viz.,* the railroad crossing existing near his employer's premises. We hold that he came within the second exception and was entitled to compensation.

The award of the Commission will be affirmed.

*Affirmed.*

HARRISON and THOMPSON, J. J., dissenting.

The opinion of the majority applying the exception to the premises rule in this case results in a broadening of the rule. We consider such action to be unsound and therefore dissent.