COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Clements and Senior Judge Coleman
Argued at Richmond, Virginia

GORDON RAY TRICE (DECEASED),
 TERESA TRICE,
 BENJAMIN CODY TRICE (A MINOR) AND
 CHRISTOPHER GAIGE TRICE (A MINOR)
                                          MEMORANDUM OPINION* BY
v.    Record No. 2230-01-2          JUDGE JAMES W. BENTON, JR.
                                             MARCH 26, 2002
JAMES A. THOMAS t/a JAMES A. THOMAS
 CO.[1] AND UNINSURED EMPLOYER'S FUND


           FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Leila H. Kilgore (Benjamin M. Smith, Jr.;
              Kilgore & Smith, on brief), for appellants.

              Wesley G. Marshall for appellee James A.
              Thomas, t/a James A. Thomas Co.

              No brief or argument for appellee Uninsured
              Employer's Fund.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

     [1] This proceeding began as a claim by Gordon Ray Trice
against his employer "James A. Thomas Co."  The employer's first
report of accident designates the employer as "James Thomas
d/b/a James A. Thomas Co."  The commission's file denotes the
employer as "James A. Thomas T/A James A. Thomas Company."  At
the evidentiary hearing, Thomas testified, however, that the
business was incorporated "six or seven years ago."  The deputy
commissioner then remarked "we've got the wrong style of the
case if that's the case" and inquired of Thomas's attorney about
the status of the business entity.  Thomas's attorney responded,
"We have it, Deputy Commissioner, as James A. Thomas Co., Inc.,"
and agreed to amend the style of the case. Throughout the
ensuing proceedings, however, and in this Court, the parties
have continued to designate the employer "James A. Thomas t/a
James A. Thomas Co."  Because the record does not indicate that
the commission changed the employer's designation, we will refer
to the entity as "employer."

The sole issue raised by this appeal is whether the Workers' Compensation Commission erred in ruling that Gordon Ray Trice was not in the course of his employment when he was involved in a fatal accident while driving his employer's truck.

I.

The record shows that Trice worked for the employer as a carpenter. On the early morning of May 26, 2000, Trice drove from his home in Spotsylvania County to the home of James A. Thomas, where he left his vehicle and obtained a truck registered to his employer. Trice drove the truck to the City of Charlottesville where he performed work for the employer. That afternoon, while driving from Charlottesville to the employer's shop in Spotsylvania, Trice was involved in an accident. Trice died three days later.

At the evidentiary hearing, Trice's wife testified that Trice generally drove himself to work. She also testified that Trice had worked in Charlottesville on another occasion within the two weeks prior to the accident and that her husband had not driven their vehicle. She did not know who drove on that day. She testified that "If they were going to like Charlottesville, I know that they would meet and they would all drive together rather than ride their own separate vehicles." She further testified as follows:

> There was a time when they all rode
> together.  Mr. Thomas had a van then and I
> know he used to meet and ride with him, but
> that hasn't been for quite a few years, so
> just recently when he was working for him,
> I'm assuming he drove himself.

Larry Bishop worked nine months, "off and on," for the employer as a carpenter.  In May 2000, he was working for the employer in Fairfax County.  He testified that during his employment he worked at "remote job sites, places other than where Mr. Thomas lived or had his business."  On those occasions, he drove himself to work or "rode with somebody else."  The employer did not pay for his travel time or expenses.

Chester Didion, who had worked three years for the employer as a carpenter, testified that he worked with Trice the day of Trice's accident and that, two weeks before the accident, he had also worked with Trice in Charlottesville.  On that previous occasion, Didion had driven the employer's truck to Charlottesville.  Didion testified that when they worked at a job site away from the employer's office, "[e]very once and awhile [the employer would] offer to let us use his [vehicle] so we didn't have to drive ours."  He indicated that he used the employer's truck only to get to job sites that were "a hundred and some miles one way."  According to Didion, however, if they "worked in [Washington] D.C. or Alexandria, or [locally, the employees] . . . used [their] own vehicles."

Didion further testified that the employer's "business was basically off and on" and that he had driven the employer's truck only two or three times. In response, however, to a question about the frequency of use of employer's vehicle, Didion testified that it was "probably about fifty/fifty." Didion also testified that the employer did not reimburse any employees for travel time or mileage.

Thomas testified that he is the only officer of the corporation and that he hired carpenters to do specific jobs for a specified period. He testified that the business was sporadic, averaging jobs two or three months a year. When asked how his employees "usually" got to remote job sites, Thomas testified: "Most of them drove. If it was convenient we met and rode together. It depends on if they wanted to get out of bed." He also testified that he did not pay the employees for travel time or reimburse for travel expenses and that Trice was not being paid for his travel time. He further testified that Trice had no duties to perform at the employer's shop after leaving Charlottesville.

The deputy commissioner found that "[t]he evidence suggests that the . . . employer occasionally accommodated its employees by allowing them to travel to a remote work site in a company vehicle" and that "no persuasive evidence [proved] . . . that this was done on a routine basis or that the furnishing of such transportation was made a part of any employment contract."

- 4 -

Thus, the deputy commissioner ruled that the evidence failed to prove an exception to the general rule that an injury sustained while going from work did not occur in the course of employment.

On review, the commission's findings included the following:

> There can be no doubt that [Trice] benefited from using the employer's truck -- it saved him from the expenses associated with using his own car. . . . [W]hile the employer occasionally accommodated employees by allowing them to drive to a remote work site in a company vehicle, this was not done on a routine basis nor did it arise out of a contract of employment. . . . There is no persuasive evidence that the employer benefited from allowing employees to take the company truck to remote sites.

The commission, therefore, affirmed the deputy commissioner's ruling that Trice was not in the course of his employment when the accident occurred, and the commission denied the request for benefits.

## II.

"As a general rule 'an employee going to or from the place where [the employee's] work is to be performed is not engaged in performing any service growing out of and incidental to [the] employment.'" Kendrick v. Nationwide Homes, Inc., 4 Va. App. 189, 190, 355 S.E.2d 347, 347 (1987) (citation omitted). The Supreme Court has "recognized three exceptions to the general rule." LeWhite Constr. Co. v. Dunn, 211 Va. 279, 282, 176 S.E.2d 809, 812 (1970). The first exception, which Trice

contends is the dispositive issue in this case, applies "[w]here in going to and from work the means of transportation is provided by the employer or the time consumed is paid for or included in the wages."  Id.

In Bristow v. Cross, 210 Va. 718, 173 S.E.2d 815 (1970), the Supreme Court specifically addressed this exception as follows:

> [A]n injury sustained by [an employee] who is provided with transportation when going to and from his [or her] work, is considered as arising out of [the] employment when such transportation is the result of an express or implied agreement between the employer and [the] employee; or where the transportation is furnished by custom to the extent that it is incidental to and part of the contract of employment; or when it is the result of a continued practice in the course of the employer's business which is beneficial to both the employer and the employee.

Id. at 720-21, 173 S.E.2d at 817 (emphasis added).  See also Dunn, 211 Va. at 282, 176 S.E.2d at 812 (noting that "[m]ost of the decisions applying the first exception have been based upon agreements, express or implied, that the employer will furnish the [employee] free transportation to and from his work").

Relying on Didion's testimony, the appellants contend that "[t]here [was] credible evidence to show that it was the custom of the Employer to furnish transportation to remote job sites." On appeal, our task is not to determine whether credible evidence exists which is contrary to the commission's decision,

- 6 -

but rather to determine whether there is credible evidence which supports the commission's ruling. C.D.S. Services v. Petrock, 218 Va. 1064, 1070, 243 S.E.2d 236, 240 (1978); Rusty's Welding Service, Inc. v. Gibson, 29 Va. App. 119, 131, 510 S.E.2d 255, 261 (1999) (en banc). "According to well established principles, '[f]actual findings of the commission that are supported by credible evidence are conclusive and binding upon this Court on appeal.'" Boys and Girls Club of Va. v. Marshall, 37 Va. App. 83, 90, 554 S.E.2d 104, 107 (2001) (citation omitted). A ruling by the commission, "however, that an injury arose . . . in the course of employment is a mixed finding of law and fact and is properly reviewable by this Court." City of Richmond v. Braxton, 230 Va. 161, 163-64, 335 S.E.2d 259, 261 (1985).

The evidence is undisputed that the employees routinely drove their own vehicles when the employer required them to perform work in the cities of Alexandria and Washington. Appellants contend, however, that the employer customarily furnished transportation when the employees were required to work "at a remote job site," such as Charlottesville. Although appellants note that Didion testified the employer's truck was used fifty percent of the time when going to "remote" locations, Thomas testified that most employees drove their own cars to "remote" locations. Bishop, who also worked for the employer, testified that when they worked in "remote" job sites "sometimes

[the employees] drove ourselves" and "sometimes [an employee] rode with somebody else."  Trice's wife also testified that when Trice worked at remote job sites, he "generally drove himself."

No testimony established that Thomas and Bishop did not include Charlottesville when they spoke of "remote" locations. Trice's wife testified that "[i]f they were going to like Charlottesville, . . . they would meet and . . . would all drive together rather than ride in their own separate vehicles."  Her testimony also does not establish that the employer was regularly providing transportation to Charlottesville. Moreover, even if Didion and other employees used the employer's vehicle fifty percent of the time to go to Charlottesville, the finder of fact could infer, based on the testimony, that "most" employees drove themselves to such places.  Indeed, no evidence proved how Didion got to Charlottesville on the day of Trice's accident or that he was in the truck during the accident.  Thus, the record contains credible evidence to support the commission's factual findings that the employer did not provide a vehicle to the employees as a custom or regular practice and that the provision of a vehicle was not either expressly or impliedly part of any employment contract.

The Supreme Court has held "that an employee furnished transportation by his employer, absent express or implied agreement or custom incidental to the employment contract, is not covered by the Act unless such transportation is beneficial

to the employer."  Dunn, 211 Va. at 283, 176 S.E.2d at 812-13.
In view of the evidence that the employees regularly traveled to
distant locales without their time or expenses being reimbursed,
the commission could reasonably find that the employer received
no benefit as a result of Trice driving its vehicle.  The
commission's finding that "no persuasive evidence [established]
that the employer benefited from allowing [Trice] to take the
company truck to remote sites" supports an inference that "the
free transportation for [Trice] was merely a favor to him which
provided no benefit to his employer."  Id. at 283, 176 S.E.2d at
813.  Indeed, Didion testified that Thomas allowed him to use
the truck on those "special occasions . . . so [Didion] didn't
have to put miles on his vehicle."  We hold that credible
evidence supports the commission's rulings.

For these reasons, we affirm the commission's decision.

Affirmed.