COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, McClanahan and Senior Judge Bumgardner
Argued at Alexandria, Virginia


THE ESTATE OF ALEJANDRO ENRIQUE
  AGUILAR HO
                                              MEMORANDUM OPINION* BY
v.        Record No. 2742-05-4             JUDGE ELIZABETH A. McCLANAHAN
                                                  OCTOBER 17, 2006
INFORMATION TECHNOLOGY SOLUTIONS
  AND ERIE INSURANCE EXCHANGE


             FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

         Paul J. Duggan for appellant.

         Benjamin J. Trichilo (Trichilo, Bancroft, McGavin, Horvath &
         Judkins, on brief), for appellees.


        The Estate of Alejandro Enrique Aguilar Ho (estate) appeals a decision of the Virginia

Workers' Compensation Commission finding Ho's (decedent) death arose out of and in the

course of his employment.  The estate also contends the commission erred by failing to find that

the application for a hearing filed by employer and its insurer was brought without reasonable

grounds and in failing to award sanctions, including costs and attorney's fees against employer

and its insurer.  For the reasons that follow, we affirm the decision of the commission.  The

parties are fully conversant with the record, and this memorandum opinion recites only those

facts and procedural history necessary to a disposition of the appeal.

                                        I.  FACTS

        A motor vehicle accident resulted in the death of Alejandro Enrique Aguilar Ho, a

passenger in one of the vehicles driven by a co-employee, James W. Tate, II.  The driver of the

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

other vehicle was Juan Carlos Yanes Cambara. Cambara testified that Tate's vehicle initially approached him from behind at twice his speed in a lane to his right. He stated that he noticed Tate's vehicle changing lanes, so he changed lanes as well. According to Cambara, Tate subsequently pulled alongside of him on the shoulder, began yelling at him, and threw a water bottle that struck his vehicle. Cambara testified that Tate alternated speeds to keep him from changing lanes and that when he saw an opening to change lanes, he attempted to move into the lane ahead of Tate so that he could take his intended exit. Cambara stated that Tate then sped up in what he believed was an attempt to hit Cambara's vehicle. Tate then braked, swerved, and lost control of his vehicle, causing it to overturn. The decedent died as a result of his injuries.

Denise Mougey and Sharon Low were eyewitnesses to the accident. Mougey testified that she observed Tate's vehicle cross three lanes of traffic without using a turn signal while gaining speed. She stated that Tate's and Cambara's vehicles were involved in an "altercation," though there was never any contact with the vehicles. Mougey indicated that Tate's vehicle passed Cambara's vehicle, but then Cambara accelerated and pulled alongside Tate's vehicle. She observed the vehicles' close proximity, that both vehicles were weaving between the lanes of traffic, and that the drivers were exchanging "words" with one another. She stated that it appeared that Cambara's vehicle "got a little too close to [Tate's vehicle] and that's when . . . [Tate's vehicle] jerked to the right and it just ran off the road and flipped over." Low stated Tate's vehicle was driving alongside her vehicle while Cambara was behind her, then Tate reduced his speed so that he could drive alongside Cambara's vehicle. Low testified that the drivers were yelling and gesturing at each other as both cars drove alongside one another. Low explained that Cambara's vehicle attempted to change lanes between Tate's vehicle and her vehicle, and Tate's vehicle "rocked a little bit to the left and just flipped over."

At the time of the accident, both Tate and the decedent were employed by Information Technology Solutions (ITS or employer), a company owned and operated by William Mergler. ITS had entered into a subcontract with All Alarm, Inc. Mergler testified he teamed Tate with the decedent and told the decedent that he was required to ride with Tate if he wanted to keep his job. Mergler stated that Tate was required to drive the decedent to the All Alarm job site and was supposed to do so on the day of the accident. The decedent did not have a driver's license, did not own or have an automobile, and was unable to travel to job sites that were not accessible by public transportation. Mergler stated that because the All Alarm job sites were not accessible by public transportation, it was part of Tate's job to transport the decedent from the metro station, near the decedent's home, to work in the morning and from work to the metro station at the end of the workday. Tate explained that Mergler asked him to transport the decedent from the metro station to the All Alarm job site and that he began this practice in February 2003. At the time of the accident, Tate received a "one-dollar-per-hour" raise from ITS that was intended to compensate Tate for providing transportation to the decedent.[1] See *infra* n.2.

## II. PROCEDURAL BACKGROUND

On September 24, 2003, ITS and its insurer, Erie Insurance Exchange, filed an application with the Virginia Workers' Compensation Commission requesting the commission "to determine the compensability of the claim of Alejandra [sic] Ho, who was killed in an automobile accident on April 14, 2003, while traveling to a job site." The estate objected to this application by asserting that the accident did not arise out of the decedent's employment. Deputy Commissioner Woolard overruled the objections and denied the estate's motion to remove the matter from the evidentiary hearing docket. After the evidentiary hearings, Deputy

---

[1] Both the employer and Tate testified that Tate received a one-dollar-per-hour raise for providing transportation to the decedent. Tate also stated that the employer also provided reimbursement for mileage by paying for half of his gasoline costs.

- 3 -

Commissioner Woolard issued an opinion on May 13, 2004, wherein he found the decedent was an independent contractor; the decedent was not injured in the course of his employment at the time of his death; and there was "no good cause for assessing attorney's fees against the employer." Deputy Commissioner Woolard did not address whether the decedent was injured in an accident which arose out of his employment.

The employer and its insurer appealed the deputy commissioner's opinion to the commission. The estate requested a review of the opinion, assigning as error, among other things, the denial of attorney's fees and imposition of sanctions against the employer and insurer. In its January 26, 2005 review opinion, the commission ruled that the decedent was an employee rather than an independent contractor of the employer at the time of his death; the accident occurred in the course of the decedent's employment; and that an assessment of costs against employer was not appropriate. The commission then remanded the matter to a deputy commissioner to determine whether the injury arose out of the employment.

Pursuant to the remand, Deputy Commissioner Cummins heard the case on May 9, 2005, and issued an opinion on June 28, 2005, wherein she found that the decedent's injury, which resulted in his death, arose out of his employment. After the estate requested a review of Deputy Commissioner Cummins's opinion, the commission, by review opinion dated October 19, 2005, reaffirmed its prior decision that the decedent's death occurred in the course of his employment and affirmed Deputy Commissioner Cummins's conclusion that the decedent's injuries and death arose out of his employment. The estate appealed the commission's decision.

### III. STANDARD OF REVIEW

In reviewing the commission's decision, we are guided by well-settled principles. "[I]t is fundamental that a finding of fact made by the Commission is conclusive and binding upon this court on review." Commonwealth v. Powell, 2 Va. App. 712, 714, 347 S.E.2d 532, 533 (1986);

see also Code § 65.2-706. "The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the commission's findings." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991). "It lies within the commission's authority to determine the facts and the weight of the evidence, and its findings in that regard, when supported by credible evidence, will not be disturbed on appeal." Rose v. Red's Hitch & Trailer Servs., Inc., 11 Va. App. 55, 60, 396 S.E.2d 392, 395 (1990) (citation omitted). "Where reasonable inferences may be drawn from the evidence in support of the commission's factual findings, they will not be disturbed by this Court on appeal." Hawks v. Henrico Co. Sch. Bd., 7 Va. App. 398, 404, 374 S.E.2d 695, 698 (1988) (citation omitted).

We view the evidence and all reasonable inferences that may be drawn therefrom in the light most favorable to the employer, the prevailing party below. Stillwell v. Lewis Tree Serv., Inc., 47 Va. App. 471, 474, 624 S.E.2d 681, 682 (2006); Clinchfield Coal Co. v. Reed, 40 Va. App. 69, 72, 577 S.E.2d 538, 539 (2003). We do not judge the credibility of the witnesses or weigh the evidence. Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 83, 608 S.E.2d 512, 517 (2005).

## IV. ANALYSIS

### A. "Arising out of and in the course of employment"

"Whether an accident arose out of and in the course of employment is a mixed question of law and fact and is properly reviewable on appeal." Kendrick v. Nationwide Homes, Inc., 4 Va. App. 189, 190, 355 S.E.2d 347, 347 (1987). The claimant bears the burden of proving that the injury arose out of and in the course of the decedent's employment. See Marketing Profiles, Inc. v. Hill, 17 Va. App. 431, 433, 437 S.E.2d 727, 729 (1993).

As a general rule, "'an employee going to and from his or her place of employment is not engaged in any service growing out of and incidental to the employment' and, thus, an injury that

occurs at such time does not arise out of and in the course of the employment." Asplundh Tree Expert Co. v. Pacific Employers Ins. Co., 269 Va. 399, 409, 611 S.E.2d 531, 536 (2005) (quoting Barnes v. Stokes, 233 Va. 249, 251, 355 S.E.2d 330, 331 (1987)). The Supreme Court has "recognized three exceptions to the general rule." LeWhite Constr. Co. v. Dunn, 211 Va. 279, 282, 176 S.E.2d 809, 812 (1970). The first exception, the dispositive issue in this case, applies "'[w]here in going to and from work the means of transportation is provided by the employer or the time consumed is paid for or included in the wages.'" Id. (quoting Kent v. Virginia-Carolina Chemical Co., 143 Va. 62, 66, 129 S.E. 330, 331-32 (1925)); see also GATX Tank Erection Co. v. Gnewuch, 221 Va. 600, 603-04, 272 S.E.2d 200, 203 (1980); Kendrick, 4 Va. App. at 191, 355 S.E.2d at 348. Thus, "[i]f an employer furnishes an employee transportation to and from work, injuries that occur during such transportation are compensable as arising out of and in the course of employment." Vaughan's Landscaping & Maintenance v. Dodson, 262 Va. 270, 273, 546 S.E.2d 437, 439 (2001) (citing Provident Life & Accident Ins. Co. v. Barnard, 236 Va. 41, 45, 372 S.E.2d 369, 371-72 (1988)); see also Dunn, 211 Va. at 282-83, 176 S.E.2d at 812.

In Bristow v. Cross, 210 Va. 718, 173 S.E.2d 815 (1970), the Supreme Court specifically addressed this exception as follows:

> *[A]n injury sustained by [an employee] who is provided with transportation when going to and from his work, is considered as arising out of [the] employment when such transportation is the result of an express or implied agreement between the employer and his employee*; or where the transportation is furnished by custom to the extent that it is incidental to and part of the contract of employment; or when it is the result of continued practice in the course of the employer's business which is beneficial to both the employer and the employee.

Id. at 720-21, 173 S.E.2d at 817 (emphasis added); see Dunn, 211 Va. at 282, 176 S.E.2d at 812 (noting that "[m]ost of the decisions applying the first exception have been based upon agreements, express or implied, that the employer will furnish the [employee] free transportation

to and from his work"). As such, if the employer provides the employee transportation to and from work pursuant to an express or implied agreement, then our inquiry is at an end. See Bristow, 210 Va. at 720-21, 173 S.E.2d at 816-17.

In its October 19, 2005 review opinion, the commission determined "that the decedent's accident occurred in transportation that was facilitated for him by the employer as part of his implicit compensation." The commission recognized that the conditions of decedent's employment, in particular, "his presence on the streets while being driven by a co-worker to a job site, pursuant to an agreement with his employer,[2] exposed the claimant to the risk of

---

[2] The agreement between the employer, Tate, and the decedent provided that Tate transport the decedent to and from job sites. In turn, Tate received additional compensation or additional compensation plus partial gasoline reimbursement from the employer as part of the agreement. In its initial review opinion on January 26, 2005, when concluding that the decedent's death occurred in the course of his employment, the commission made factual findings with respect to the agreement that the employer provided transportation to the decedent, as follows:

> [W]e agree with the employer that it provided transportation to the decedent. The evidence indicates that the employer either paid Tate a dollar more per hour to pick up the decedent, or paid him a dollar more per hour and paid for half of the gas he used in his personal vehicle. Under either scenario, the employer regularly paid a sum of money to Tate because he picked up the decedent at the Franconia-Springfield metro station and transported him to wherever they were working that day. The evidence indicates that a verbal arrangement to that effect existed between Tate, the decedent, and Mergler. Because the decedent had no other means to get to work from the metro station, the transportation agreement was inexplicably linked to his employment. If the employer did not arrange for the decedent's transportation, he would have been unable to work for the employer.

> *   *   *   *   *   *   *

> Accordingly, we find that the employer proved that it provided the decedent's transportation to and from work pursuant to an agreement that became an implicit prerequisite to his employment. Thus, the employer established an exception to the "going and coming" rule.

injury."[3] See Marketing Profiles, 17 Va. App. at 435, 437 S.E.2d at 730; Uninsured Employer's Fund v. Gabriel, 47 Va. App. 95, 622 S.E.2d 273 (2005).

The employer agreed to provide the decedent transportation because the decedent did not have a driver's license, did not own a vehicle, and had no other means to travel to and from work. Tate received additional compensation for transporting the decedent to and from work, and there is evidence that he may have also received partial reimbursement for the cost of gasoline. See Cardillo v. Liberty Mutual Ins. Co., 330 U.S. 469, 482-83 (1947) ("Where there is that obligation [to provide transportation], it becomes irrelevant . . . whether the employer performs the obligation by supplying its own vehicle, hiring the vehicle of an independent contractor, making arrangements with a common carrier, reimbursing employees for the use of their own vehicles, or reimbursing employees for the costs of transportation by any means they desire to use."); Barnard, 236 Va. at 47, 372 S.E.2d at 372-73 (compensation allowed where employer "agrees to provide the employee transportation by company vehicle or public conveyance; or to pay the employee wages or salary for the time spent in travel required by the

---

In its October 19, 2005 review opinion, the commission reiterated those findings, stating the employer "provided the decedent's transportation to and from work (by giving Mr. Tate additional compensation for transporting the decedent) pursuant to an agreement which became an implicit prerequisite to the decedent's employment." The commission reaffirmed its prior ruling that "[b]ecause the decedent's accident occurred when he was using the transportation provided by his employer and because . . . he was on route to the employer's job site at the time of his death, . . . the decedent's death occurred in the course of his employment."

[3] The estate asserts that the commission failed to provide sufficient factual findings so that we may review the award on appeal. We disagree. The commission "must find as facts the basic component elements of which the [legal] conclusions are constituted." Goodyear Tire & Rubber Co. v. Pierce, 5 Va. App. 374, 384, 363 S.E.2d 433, 438 (1987). An adequate statement of the findings of fact "is a simple, straightforward statement of what happened." Id. at 385, 363 S.E.2d at 439. The commission is not bound or limited by the findings and decision of the deputy commissioner. Bullion Hollow Enters. v. Lane, 14 Va. App. 725, 729, 418 S.E.2d 904, 907 (1992) (Pierce only "prevents the commission from arbitrarily disregarding an explicit credibility finding of the deputy commissioner" when there is a "'specific recorded observation' of a key witnesses' demeanor or appearance.").

work; or to reimburse the employee expenses incurred in the operation of his own vehicle in the performance of his duties").

The commission's factual findings are supported by credible evidence. Based upon these findings, the commission could determine that the employer provided transportation to the decedent pursuant to an agreement between the employer, the decedent, and Tate. As such, under Virginia decisions, the employer has proved an exception to the general rule barring compensation for injuries received while going to and coming from work. We, therefore, affirm the commission's decision that the decedent's accident and death arose out of and in the course of his employment.

B. <u>Whether the commission erred in finding that Ho was not the victim of assault</u>

In its October 19, 2005 review opinion, the commission rejected the contention that the decedent was assaulted, and instead found that the decedent's death resulted from the "extreme negligence and reckless conduct" of Tate and Cambara. We conclude the record contains credible evidence to support the commission's decision. <u>See</u> <u>Ryan's Family Steak Houses, Inc. v. Gowan</u>, 32 Va. App. 459, 464, 528 S.E.2d 720, 723 (2000) ("When a conclusion of the commission is supported by credible evidence in the record, we will not disturb the commission's findings on appeal.").

C. <u>Waiver of employee-independent contractor issue</u>

Although the estate asserts that the decedent was an independent contractor, and not an employee, the question is waived under Rule 5A:20(e). The estate fails to cite the principles of law, the argument, and the authority relating to the issue.[4] <u>See</u> Rule 5A:20(e). Questions "unsupported by argument, authority, or citations to the record do not merit appellate

---

[4] In fact, the estate states "Regardless of how this Court were to decide the issues of whether Ho was an employee who was injured during the course of his employment, Ho's death is not compensable" because "Ho was assaulted." <u>See</u> *supra* part B of the opinion.

consideration." Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992).

Accordingly, we will not address the merits of this issue.

### D. Attorney's fees, costs, and sanctions

The record reflects that employer's claim requesting determination of the compensability of decedent's death was based on reasonable grounds and a good faith belief that it was a compensable injury under the Act. See Code § 65.2-713 (allowing commission, in its discretion, to sanction an employer or insurer who has "brought, prosecuted, or defended [a] proceeding[] without reasonable grounds" or who has "delayed payment without reasonable grounds" by "assessing against the [offending] employer or insurer" payment of the whole cost of the proceeding, including attorney's fees); see also Code § 65.2-702 ("either party may make application to the commission for a hearing in regard to the matters at issue and for a ruling therein"). We deny the estate's request for attorney's fees, costs, and sanctions against the employer.

### V. CONCLUSION

Accordingly, for the reasons stated above, the commission's decision is affirmed.

Affirmed.